**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

| | | |
|---|---|---|
| Highmark, Inc., | § | |
| | § | |
| Plaintiff, | § | Civil No: 4:03 CV-1384-Y |
| | § | |
| v. | § | Judge Terry R. Means |
| | § | |
| Allcare Health Management Systems, Inc., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM IN SUPPORT OF HIGHMARK'S MOTION**
**FOR EXCEPTIONAL CASE FINDING AND AWARD OF**
**ATTORNEY FEES AND EXPENSES**

Cynthia E. Kernick
Pa. ID No. 43912
Kevin S. Katona
PA ID No. 91651
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-4176/3848

Eugene LeDonne
N.Y. ID No. 2923258
REED SMITH LLP
599 Lexington Avenue
29th Floor
New York, NY 10022
(212) 521-5402

and

Craig B. Florence
Texas State Bar No. 07158010
Robert Slovak
Texas State Bar No. 24013523
GARDERE WYNNE SEWELL L.L.P.
1601 Elm Street, Suite 3000
Dallas, TX 75201
(214) 999-3000

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................1

II. THE "BUSINESS" OF ALLCARE: LITIGATION .............................................2

III. ARGUMENT......................................................................................................6

   A.   **The Legal Standard For An "Exceptional Case" and Award of Fees** ......................6

   B.   **This Is An "Exceptional" Case That Justifies an Award of Fees** ...............................7

       1.   Allcare's Pattern of Asserting and Withdrawing Meritless Claims  and Motions Was Designed to Make This Action More Expensive................................7

       2.   It Was Unreasonable to Contend That Highmark Infringed Claim 52(c) ...............10

       3.   Allcare's Failure to Investigate Its Frivolous Claims................................................12

       4.   Allcare Paid Fact Witnesses and Paid Experts for Success .....................................13

       5.   Allcare Failed to Cooperate in Document Production ............................................14

       6.   Allcare Made False Representations in W.D.Pa That Caused This Action to be Transferred, Increasing Expense to Highmark....................................................16

       7.   Allcare Permitted Its Counsel to Falsely Represent Himself to Be a Patent Lawyer.....................................................................................................................16

       8.   The Totality of Allcare's Actions Meets The Standards of Section 285 .................17

   C.   **An Award of Fees Is Appropriate Under Rule 11 and This Court's Inherent Powers**.....................................................................................................................18

       1.   Federal Rule of Civil Procedure 11 ........................................................................18

       2.   This Court's Inherent Powers To Award Fees .........................................................20

   D.   **Highmark's Fees and Costs Were Reasonable** .........................................................21

       1.   Highmark's Attorney Fees and Expenses Are Reasonable ......................................22

       2.   Expert Witness Fees Were Reasonable And Warranted ..........................................23

       3.   Post-Judgment Interest Is Appropriate ...................................................................24

IV. CONCLUSION .................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

<u>ACCO Brands, Inc. v. Micro Security Devices, Inc.</u>, 346 F.3d 1075 (Fed. Cir. 2003) ................................................................................................... 4

<u>Amsted Indus. Inc. v. Buckeye Steel Castings Co.</u>, 23 F.3d 374 (Fed. Cir. 1994) ........................................................................................................ 6

<u>Ashcroft v. Paper Mate Mfg. Co.</u>, 434 F.2d 910 (9<u>th</u> Cir. 1970).................................................. 14

<u>Automated Business Co., Inc. v. NEC America, Inc.</u>, 202 F.3d 1353 (Fed. Cir. 2000) ............................................................................................... 6, 7, 8

<u>Beckman Instruments, Inc. v. LKB Produkter AB</u>, 892 F.2d 1547 (Fed. Cir. 1989) ........................................................................................................ 6

<u>Central Soya Co., Inc. v. Geo A. Hormel & Co.</u>, 723 F.2d 1573 (Fed. Cir. 1983) ..................................................................................................... 6, 21

<u>Eltech Sys. Corp. v. PPG Indus., Inc.</u>, 903 F.2d 805 (Fed. Cir. 1990) ........................................ 15

<u>Hall v. Cole</u>, 412 U.S. 1 (1973) .................................................................................................... 20

<u>Interspiro USA, Inc. v. Figgie, Int'l.</u>, 815 F.Supp. 1488 (D. Del. 1993) ..................................... 20

<u>Lam, Inc. v. Johns-Manville Corp.</u>, 718 F.2d 1056 (Fed. Cir. 1983) .......................................... 21

<u>Mathis v. Spears</u>, 857 F.2d 749 (Fed. Cir. 1988)............................................................... 6, 12, 21

<u>Pitney Bowes, Inc. v. Hewlett Packard Co.</u>, 182 F.3d 1298 (Fed. Cir. 1999) ..................................................................................................... 19

<u>Rapoport v. Dement</u>, 254 F.3d 1053 (Fed. Cir. 2001) ................................................................. 19

<u>S. Bravo Sys., Inc. v. Containment Technologies Corp.</u>, 96 F.3d 1372 (Fed. Cir. 1996)................................................................................................... 2, 19

<u>S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.</u>, 781 F.2d 198 (Fed. Cir. 1986) ........................................................................................................ 7

<u>Sensonics, Inc. v. Aerosonic Corp.</u>, 81 F.3d 1566 (Fed. Cir. 1996)............................................. 6

<u>Stephens v. Tech Intern., Inc.</u>, 393 F.3d 1269 (Fed. Cir. 2004) ................................................... 6

Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358 (Fed. Cir. 2001) .................................................................................................................. 2, 7, 18

Townsend v. Holman Consulting Corp., 929 F.2d 1358 (9th Cir. 1990) ........................................ 2

United Stars Indus., Inc. v. Plastech Engineered Prods., Inc., 525 F.3d 605 (7th Cir. 2008)................................................................................................................ 18

View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981 (Fed. Cir. 2000) ................................................................................................................ 19, 20

Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc., 231 F.3d 1339 (Fed. Cir. 2000) ............................................................................................................... 2

STATUTES

35 U.S.C. § 285.................................................................................................................... 1, 6

OTHER AUTHORITIES

Chisum on Patents § 20.03[4][c][iii] ...................................................................................... 7

## I.   INTRODUCTION

Highmark, Inc. ("Highmark"), the prevailing party in this action, moves this Court for a determination that this case is "exceptional" and seeks an award of attorney fees and expenses against the Counterclaim-Plaintiff Allcare Health Management Systems, Inc. ("Allcare"). Allcare (1) asserted claims that had no basis in law or fact; (2) failed to engage in a reasonable investigation prior to asserting meritless allegations of infringement of United States Patent 5,301,105 (the "'105 Patent"); and (3) engaged in a pattern and practice of vexatious litigation tactics purposefully designed to increase the expense to Highmark and force Highmark to take a license under the '105 Patent.  An award of fees is thus proper under 35 U.S.C. § 285, Federal Rule of Civil Procedure 11(b)(1)-(3) and (c), and the Court's inherent discretion to award fees to prevent an injustice from being done to a party.

The process of determining whether to award attorney fees is an unpleasant task.  Here, it requires the Court to delve into an extensive record presenting the nitty-gritty of a case that spanned five and a half years.  But applicable law requires this consideration because Allcare's acts were egregious and outrageous.  Indeed, this Court already recognized that Allcare's discovery tactics have been abusive when it previously sanctioned Allcare for bad faith discovery.  Dckt. No. 395.  (Highmark is not seeking here a second recovery of fees associated with the conduct that precipitated the previous award).

As shown *infra* and in more detail in the contemporaneously submitted Proposed Findings of Facts in Support of Highmark's Motion ("PFOF") and Appendix, there is much more that justifies an award of fees.  For example:

1. Allcare engaged in a pattern of asserting and then withdrawing meritless claims and motions (including infringement of Claim 102 that Allcare withdrew, with prejudice, after more than four years), PFOF 29-38, 132-141;

2. The question of infringement of Claim 52 was not a close one and, in fact, was so frivolous that even Allcare's expert, Dr. Stephen Holland, could not fully support it, PFOF 39-57;

3. Allcare failed to perform a proper investigation prior to asserting infringement, PFOF 91-123, which led to the frivolous assertion of infringement of Claims 52, 53 and 102, PFOF 29-57;

4. Allcare paid expert witnesses based upon success and paid fact witnesses not to cooperate with Highmark, PFOF 127-131;

5. Allcare knowingly and intentionally delayed document production to disadvantage Highmark, PFOF 165-188, 197-207; and

6. Allcare made false representations to Judge Lancaster in the Western District of Pennsylvania that caused this action to be transferred to this district, PFOF 189-196.

In deciding whether a case is exceptional under the Patent Statute and whether to award fees, a district court must give careful consideration to the litigation as a whole and is required to set forth the reasons for its conclusions in detail to afford a meaningful basis for appellate review. Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358, 1377 (Fed. Cir. 2001); Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc., 231 F.3d 1339, 1347 (Fed. Cir. 2000) (a court must evaluate the "totality of the circumstances"). Just as under 35 U.S.C. § 285, when assessing Rule 11 violations and sanctions, once a strong showing has been made that a violation exists, a district court should provide a clear statement of the factors considered in assessing sanctions and, if sanctions are denied, the district court must provide an explanation for disregarding the proffered showing so that the appellate court can "discern whether the district court considered the relevant factors." S. Bravo Sys., Inc. v. Containment Technologies Corp., 96 F.3d at 1372, 1374 (Fed. Cir. 1996), citing Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). The facts set forth in the detailed PFOF support both the Section 285 and Rule 11 factors.

## II. THE "BUSINESS" OF ALLCARE: LITIGATION

The '105 Patent issued to the inventor, Desmond Cummings, on April 5, 1994 and thereafter was bought by Allcare. PFOF 2. The patent broadly relates to a managed healthcare system that uses a computer system to interconnect and integrate the interaction of patients, healthcare providers, financial institutions, insurance companies, utilization reviewers and

employers into a single system.  *Id*.  Lacking sufficient capital, Allcare spent years approaching dozens of companies, hoping to find a partner willing to help underwrite the cost of developing the system of the '105 Patent.  PFOF 63.  Failing to find development partners, Allcare spent even more years trying to license its patent to third parties.  No one invested any monies to develop the system of the '105 Patent and no one agreed to take a license.  PFOF 63, 66.

Allcare eventually was introduced to Ray Niro, a famous patent litigator and the self-proclaimed first "patent troll," PFOF 64, who advised Allcare that, to be taken seriously, Allcare would "have to sue."  PFOF 65.  Allcare made Mr. Niro a shareholder and implemented his "licensing-by-litigation" strategy.  *Id*.  To insulate itself, Allcare then entered into contingent-fee arrangements with attorneys who provided legal services and paid litigation-related expenses thus relieving Allcare of economic risk.  PFOF 67-70.  After so many years of failure, by 1999, Allcare was finally in business; it was the business of licensing-by-litigation.

To date, Allcare has sued twenty-six parties in four separate actions (the "Prior Actions"),[1] including one previously before this Court:  <u>Allcare Health Mngmt. Sys., Inc. v. Cerner Cap. Et al.</u>, (4:99 CV 464-Y) (N.D. Texas) (the "Cerner Action").  PFOF 73-79.  Allcare hauled these parties into court knowing they would be financially motivated to settle for some monetary payment rather than incur as much as $7 million in defending a patent infringement action regardless of whether they infringed.  It was not disappointed.

Allcare sells no products.  It offers no services.  It does not prepare business plans, hold regular meetings, or even have an office from which it conducts regular business.  PFOF 58-62.  Instead, it bets on litigation and, prior to this action, its bets paid off with forced settlements just

---

[1]   These prior litigations include <u>Allcare Health Mngmt. Sys., Inc. v. Cerner Corp.</u>, (4:99 CV 464-Y) (N.D.Texas) (June 11, 1999) (J. Means) (the "Cerner Litigation"); <u>Allcare Health Mngmt. Sys., Inc. v. Advanced Paradigm, Inc.</u>, (400-CV-1683-E) (N.D. Tx) (J. McBryde) (filed Oct. 12, 2000); <u>Allcare Health Mngmt. Sys., Inc. v. Trigon Healthcare, Inc.</u>, (CA 1:02-CV-756-A) (E.D. Va.) (May 24, 2002) (the "Trigon Litigation"); and <u>Allcare Health Mngmt. Sys., Inc. v. Harvard Pilgrim</u>, (CA No. 503-CV-89) (filed May 5, 2003).  *See* PFOF 73-79.

as Mr. Niro predicted.  Every single party sued by Allcare settled at a fraction of likely defense costs.  PFOF 75, 79.  Allcare and its principals reaped huge windfalls from these settlements even though they contributed nothing to the invention.  PFOF 58-60, 75, 79.  Allcare, itself, had no meaningful overhead or production costs, incurred no attorneys' fees and little or no litigation costs. PFOF 68-70.

Highmark, on the other hand, is a not-for-profit hospital and health services plan providing healthcare insurance that makes it possible for individuals to obtain sophisticated medical services that they otherwise could not afford.  Unquestionably, one of the most significant issues facing Americans today is the spiraling cost of healthcare.  Yet, comes Allcare, a patent troll that uses litigation as a sword to attack healthcare-related companies and, with no risk to itself, and potentially raises the cost of healthcare even though it has not made a single contribution to the '105 Patent.  The high price tag on patent litigation explains why other healthcare-related companies sued by Allcare chose to settle, rather than take a principled stand against a party with no real interest in healthcare and no legitimate business interest to protect.

Consistent with Allcare's goal of using litigation to force licenses where no need or desire to take a license existed, Allcare engaged in deceptive practices to identify "target" licenses.  For example, Allcare commissioned Seaport Surveys to survey more than 300 health-care related companies, including Highmark.   PFOF 92-94.   The survey began by <u>falsely</u> advising its purpose as being to identify "leaders in the electronic processing of authorization referrals."   PFOF 95-96.   The survey did not ask whether Highmark practiced all of the individual elements of any claim of the '105 Patent (a finding necessary for infringement). <u>ACCO Brands, Inc. v. Micro Security Devices, Inc.</u>, 346 F.3d 1075, 1080 (Fed. Cir. 2003). Instead, the survey only broadly questioned whether Highmark had the capability to accept electronic submission of information from a health-care provider to the company (PFOF 97-102), despite the fact that the scope of its invention is far more narrow and limited by the claims

- 4 -

of the patent.  (A summary of the Court's construction of pertinent claims appears in PFOF 22-28.)

The Seaport Survey results were then "interpreted" by Allcare's Vice-President of Licensing, Robert Shelton, a lay person who admitted he has no experience or education to understand the scope or infringement of patent claims.  PFOF 103-108.  Mr. Shelton, drawing his own conclusions, threatened Highmark with a suit for infringement unless a license was taken under the '105 Patent.   PFOF 83-90.   Allcare's threat was intended as leverage to force Highmark to buy a license from Allcare even though Allcare had no evidence that Highmark's system infringed any of the claims of the '105 Patent.  Because Highmark believed that it did not infringe the '105 Patent and was concerned that Allcare would sue Highmark in a jurisdiction foreign to it (Highmark is a Pennsylvania company whose system and employees reside in Pennsylvania, PFOF 2), Highmark filed a Complaint for Declaratory Judgment in the Western District of Pennsylvania.  Dckt. No. 1.

Allcare avoided the jurisdiction of the Western District of Pennsylvania where Highmark does business and where the accused system resides by falsely representing to that court that Allcare had no control over the actions of Seaport Surveys.  PFOF 189-196.  After this case was transferred to the Northern District of Texas, Allcare inspected Highmark's system on April 14, 2004.  PFOF 5.  Allcare knew by then, at the latest, that Highmark's system did not infringe the '105 Patent.

After 5½ years of litigation, this Court entered summary judgment of non-infringement in favor of Highmark.  PFOF 29-31.  Dozens of motions were filed, almost twenty fact witnesses deposed, the parties exchanged five expert reports and more than a quarter million documents, they engaged in two rounds of claim construction and summary judgment briefing, and attended two hearings before the Special Master.  It was a very expensive, protracted, highly disruptive process that would have overwhelmed most any other party.  But Highmark endured and prevailed and now asks this Court to consider whether the law provides a basis for shifting some,

if not all, of the approximately $5 million incurred by Highmark in defending this action. In this Memorandum, Highmark demonstrates why Allcare should be required to refund to Highmark the extraordinary and unnecessary fees and expenses incurred in this action because Allcare pursued claims it knew were doomed to fail despite Allcare's pervasive and abusive litigation tactics and strategies.

## III.   ARGUMENT

### A.   The Legal Standard For An "Exceptional Case" and Award of Fees

Section 285 provides that, in patent infringement actions, a court may award attorney fees and expenses to the <u>prevailing</u> party if there is clear and convincing evidence that the case is "exceptional." 35 U.S.C. § 285. The purpose of Section 285 is "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." <u>Central Soya Co., Inc. v. Geo. A. Hormel & Co.</u>, 723 F.2d 1573, 1578 (Fed. Cir. 1983). It serves as a <u>deterrent</u> to frivolous claims of patent infringement. <u>Automated Business Co., Inc. v. NEC America, Inc.</u>, 202 F.3d 1353, 1355 (Fed. Cir. 2000), citing <u>Mathis v. Spears</u>, 857 F.2d 749, 754 (Fed. Cir. 1988).

A variety of grounds have justified an "exceptional" case finding, including litigation misconduct, vexatious and otherwise unjustified litigation, lack of legal or factual support for a claim of infringement such that the action was frivolous when filed or was maintained after the facts or law confirmed its frivolous nature, or for inequitable conduct before the PTO, among other reasons. *See* <u>Stephens v. Tech Intern., Inc.</u>, 393 F.3d 1269, 1273 (Fed. Cir. 2004); <u>Amsted Indus. Inc. v. Buckeye Steel Castings Co.</u>, 23 F.3d 374, 376 (Fed. Cir. 1994), and <u>Beckman Instruments, Inc. v. LKB Produkter AB</u>, 892 F.2d 1547, 1551 (Fed. Cir. 1989). Importantly, unprofessional behavior of counsel is relevant to the award of attorney fees, and may suffice to make a case exceptional under Section 285. <u>Sensonics, Inc. v. Aerosonic Corp.</u>, 81 F.3d 1566, 1574 (Fed. Cir. 1996).

Application of Section 285 requires a court to determine first whether the case is exceptional and then, if it is, whether an award of fees is justified.  If they are, the court next determines the amount of the award.  In deciding whether to award fees, the case, and the actions of the party from whom fees are sought, must be viewed as a whole.  *See* Superior Fireplace, 270 at 1358, 1377 (Fed. Cir. 2001).  The court is required to weigh factors such as the closeness of the case, the tactics of counsel, and the conduct of the parties themselves that contribute to a fair allocation of the burdens of litigation.  S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201 (Fed. Cir. 1986); Chisum on Patents § 20.03[4][c][iii].  In a truly egregious case, "courts should not be, and have not been, limited to reimbursement of only those amounts actually paid by the injured named party." Automated Business, 202 F.3d at 1356.

**B.       This Is An "Exceptional" Case That Justifies an Award of Fees**

This case is "exceptional" and the entirety of Highmark's fees should be awarded.  The facts underpinning this determination and award are set forth in the accompanying PFOF in which each proposed fact is supported by documents and testimony contained in a supporting Appendix.   Allcare's actions set forth therein were in furtherance of its scheme to force Highmark to take a license under the '105 Patent before Allcare's claims could be assessed on their merits and their frivolous nature revealed.  Each of these acts is supported by the clear and convincing evidence.  Each of these acts confirm that the behavior of Allcare and its counsel, the Hill Kertscher firm and Mr. Hill, were of such a nature as to cause this action to be "exceptional."

1.       Allcare's Pattern of Asserting and Withdrawing Meritless Claims
         and Motions Was Designed to Make This Action More Expensive

There are four key examples of Allcare's practice of expanding the cost of litigation to Highmark by asserting and withdrawing meritless claims and motions.  These are, by no means, the only examples.

First, in 2004, Allcare asserted infringement of Claim 102, but then, faced with Highmark's Summary Judgment Motion of non-infringement, Allcare simply failed to present any response or opposition.  PFOF 32.  Allcare's pre-filing investigation was so lacking that it failed to consider whether Highmark's system contained key claim elements of Claim 102 even though the Seaport Survey afforded an opportunity to do so.  PFOF 100-101.  Allcare inspected Highmark's system on April 14, 2004, but did not bring its expert to the inspection.  PFOF 5. Even so, Allcare knew by then that Highmark did not infringe Claim 102.  This inspection is where Allcare learned the facts relied upon by this Court for its finding of non-infringement, i.e., it learned that Highmark providers input ICD9 Codes as the reason for the treatment for which they are seeking pre-approval, not to identify the treatment.  PFOF 56.

Allcare continued to press discovery for more than <u>four</u> years after learning these key facts, yet by 2007, when Allcare produced the expert report of Dr. Stephen Holland, the opinion of Dr. Holland failed completely to support Allcare's infringement contentions as to Claim 102. In fact, Dr. Holland testified in his deposition that <u>two</u> separate elements of Claim 102 were missing from Highmark's system.  PFOF 33-38.  Rather than withdrawing Claim 102 at this point, Allcare forced Highmark to move for summary judgment on this claim and Allcare's response was, simply, to offer no opposition.  Without any explanation (but after having been prompted by the Special Master), Allcare then withdrew its assertions as to Claim 102 with prejudice.  Dckt. No. 32.  It is hard to imagine a clearer instance of an exceptional case that warrants an award of fees.  *See* <u>Automated Business</u>, 202 F.3d at 1355; <u>Eltech Sys. Corp. v. PPG Indus., Inc.</u>, 903 F.2d 805, 811 (Fed. Cir. 1990) (where plaintiff is "manifestly unreasonable in assessing infringement while continuing to assert infringement in court, an inference is proper of bad faith"); <u>Loctite Corp. v. Fel-Pro, Inc.</u>, 667 F.2d 577 (7th Cir. 1981)  (exceptional case finding upheld where plaintiff initiated suit with unconfirmed data and plaintiff failed to provide facts to support a claim of infringement after three years of discovery).

The fact that Allcare's expert could not provide an opinion to support the required "integrated interconnection and interaction" of Claim 102 confirms a lack of any credible basis for Allcare's assertion of infringement of Claim 102. Thus, Allcare (1) should not have asserted this claim, or, at the very least, (2) should have withdrawn this claim once it became plain that the "interconnection and interaction" required by Claim 102 did not exist.

Second, Allcare improperly asserted in its Counterclaims that Highmark was bound, under principles of res judicata and collateral estoppel, by certain rulings entered by the district court in Allcare Health Mngmt. Sys., Inc. v. Trigon Healthcare, Inc. (CA 1:02-CV-56-A) (E.D. Va.) (the "Trigon Rulings") Dckt. No. 22 at 5-6 (Fifth Defense). However, prior to asserting this defense, Allcare admitted – in writing – that Highmark was not and could not be bound by these Trigon Rulings. PFOF 132. Despite this admission, Allcare refused to voluntarily withdraw these claims until Highmark filed a motion for judgment on the pleadings, Dckt. No. 28. PDOF 133-135. Once again, Allcare did not respond to Highmark's motion but simply withdrew its allegations, Dckt. No. 33 (as it did regarding Claim 102), after having forced Highmark to expend resources in briefing its motion for judgment on the pleadings. See PFOF 136.

Third, throughout briefing on claim construction (the heart of every patent case), Allcare continually shifted its position on the construction of the very claim element that was dispositive of non-infringement, Claim 52(c). This Court's Initial Scheduling Order required Allcare to set forth its proposed claim construction by not later than August 23, 2004, PFOF 4, and Allcare served its first proposed claim construction before the Court's deadline. PFOF 7. Then after Highmark filed its 2004 Motion for Summary Judgment [Dckt. No. 134, Allcare changed its proposed construction in a Motion for Claim Construction filed December 13, 2004 [Dckt. No. 158]. PFOF 11-12. After Highmark opposed that motion, Allcare submitted yet a different proposed construction of Claim 52(c) in the form of a new proposed order. PFOF 13-15. This change ultimately resulted in this Court striking all briefing and ordering claim construction to be rebriefed. PFOF 16. Finally, after re-briefing and a hearing on claim construction held to the

- 9 -

Special Master, Allcare <u>again</u> changed its proposed construction of Claim 52(c), now a fourth time.  PFOF 20.  Allcare's moving target of proposed Claim Construction caused briefing and other aspects of the case to be redone, thus delaying this litigation for a year, and increasing costs to Highmark of at least one million dollars.  PFOF 21.

Fourth, beginning early in this action, Allcare engaged in abusive discovery tactics designed to pressure Highmark into taking a license under the '105 Patent.  Within a period of only eight weeks (of the more than four-<u>year</u> long discovery period), and just prior to court-ordered mediation (Dckt. No.  59), Allcare served Highmark with <u>18 separate sets</u> of discovery requests.  PFOF 126.  This plethora of discovery requests immediately prior to the mediation caused disruption to the preparation of Highmark's defense and its preparations for the mediation, as Allcare surely intended.  PFOF 126.

During this same time period, Allcare filed <u>nine</u> motions to compel discovery, <u>seven</u> of which it denominated as "emergency" motions.  PFOF 137.  Five of these "emergency" motions were served on Highmark <u>during</u> a Rule 30(b)(6) deposition.  PFOF 138-139.  Consistent with its practice in this action, Allcare ultimately withdrew <u>six</u> of the <u>nine</u> motions but only <u>after</u> Highmark incurred legal fees and expenses to brief and file oppositions—just as happened with Claim 102 and Allcare's res judicata and collateral estoppel allegations.  PFOF 137, 141.

2.     It Was Unreasonable to Contend That Highmark Infringed Claim 52(c)

Highmark filed a Motion for Summary Judgment of Non-infringement, Dckt. No. 402, that focused on a single element of Claim 52,[2] element (c), that requires the entry into a system of "data symbolic of patient symptoms for tentatively identifying a proposed mode of treatment." PFOF 42.  This element, and its component parts, was construed by the Special Master in his Claim Construction Report at 28 and 40.  *See also* PFOF 24-28.  In pertinent part, Highmark's

---

[2]   Without infringement of Claim 52, there could be no infringement of Claim 53.  *See* Dckt. No.  484 at 9.

Summary Judgment Motion asserted that Highmark's system does not infringe Claim 52(c) because it does not accept entry of "data symbolic of patient symptoms for tentatively identifying a proposed mode of treatment."  Dckt. No. 402 at 28, 33.

After considering Highmark's Motion, the Special Master recommended a finding of non-infringement.  Dckt. No. 484 at 15, 20-21.  This Court concurred (Dckt. No. 504) on the basis that Allcare's own expert, Dr. Holland, essentially admitted that Highmark's system did not contain the required Claim element 52(c).  *See* PFOF 46-51.  Specifically, this Court found that Allcare relied on Highmark's use of International Classification of Disease Codes ("ICD Codes") for the required "data symbolic of patient symptoms."  PFOF 50.  But it further found that it was the opinion of Allcare's own expert that these ICD codes were <u>not</u> entered into Highmark's system to <u>identify</u> a proposed mode of treatment as required by element 52(c).  PFOF 50-51.  In reaching this conclusion, this Court relied exclusively on Dr. Holland's opinion and did not rely on any evidence submitted by Highmark.  *Id.*

In addition, Allcare's counsel <u>admitted</u> that the '105 Patent would <u>not</u> support Allcare's infringement contention, PFOF 52, and tried to justify the paucity of its expert's opinion by claiming that Dr. Holland had <u>misunderstood</u> the Court's claim construction.   PFOF 54-56.  These actions – having no concrete evidence of infringement, admitting that its arguments were not supported by the patent, and employing an "expert" that cannot understand the Court's claim construction – are the sort of egregious actions that justify a Section 285 shifting of attorneys' fees from Highmark to Allcare.

Even if this Court were to assume that Allcare had formed a reasonable belief as to infringement prior to alleging infringement of Claims 52, 53 and 102, Allcare's failure to timely withdraw these claims once it became clear that it could not <u>prove</u> infringement is grounds for an exceptional case finding and an award of attorneys fees.  <u>Phonometrics, Inc. v. Westin Hotel Co.</u>, 350 F.3d 1242, 1246-47 (Fed. Cir. 2003) (an exceptional finding is appropriate when the patent holder continued prosecution of the action after it became apparent that the patent was not

infringed); *see also* <u>Mathis</u>, 857 F.2d at 753-54 (affirming award of attorneys' fees, in part, because patent owner continued prosecution of case in bad faith).

     3.    <u>Allcare's Failure to Investigate Its Frivolous Claims</u>

A patentee's failure to perform an adequate pre-filing investigation is grounds for an exceptional case finding. *See* <u>Loctite</u>, 667 F.2d at 584. Allcare did not perform a reasonable pre-filing investigation but rather engaged in a fishing expedition in the nature of the Seaport Survey that was launched with a misrepresentation of its purpose that necessarily skewed the survey results. The results then were interpreted by Mr. Shelton, a lay person. But as discussed *supra* at 4, not a single survey question posed by Seaport Surveys, and nothing of Mr. Shelton's investigation, was directed to learning whether Highmark's system actually infringed Claims 52, 53 or 102. PFOF 97-102, 108-119. Without question, any pre-filing investigation that fails to evaluate the ultimate patent infringement issue of whether every element of an asserted claim existed in Highmark's system is *per se* defective and thus does not provide a reasonable basis for asserting infringement.

Allcare knew, or reasonably should have known, that Highmark's system did not infringe because it did not contain Claim element 52(c) or the required elements of Claim 102, as admitted by Allcare's expert Dr. Holland. PFOF 32-38, 49-51. It knew this before the inception of this litigation based on the survey, and certainly knew it not later than its <u>April 2004</u> inspection of Highmark's system. PFOF 56. It is common knowledge that all but 2% of patent cases settle before trial. Allcare had been successful in obtaining litigation-avoidance monetary settlements in the past. PFOF 73-79. Its willingness to once more roll the dice in disregard of the burden and expense to Highmark may be understandable given that no economic downside existed for Allcare but it is unacceptable and grounds for an award of fees to Highmark.

Finally, prior to asserting infringement, Allcare failed to obtain an opinion of counsel that Highmark's system infringed any claim of the '105 Patent. PFOF 114-116. It relied only on Mr. Shelton's lay evaluation of infringement. Yet none of Mr. Shelton's work or educational

experiences provided him the ability to assess infringement of the '105 Patent or the technology of the '105 Patent, any prior related technologies or prior art, or the construction of any of the claims of any of the patents.  His lay opinion cannot be a substitute for reasoned legal opinion, especially given his admitted lack of understanding in this area.  PFOF 103-106.  Where as here, "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court," a court is entitled to <u>infer</u> "bad faith" and thus an exceptional case. <u>Eltech</u>, 903 F.2d at 811.

4.     <u>Allcare Paid Fact Witnesses and Paid Experts for Success</u>

Emblematic of Allcare's bad faith tactics is its use of an expert who was compensated for his testimony based on whether Allcare received a successful outcome.  In support of its claim construction (Dckt. No. 287 at 23) and in opposition to Highmark's *first* motion for summary judgment (Dckt. No. 143), Allcare offered the opinion of Charles Singer, who was being paid 3.5% of any recovery in this case for his testimony, *i.e.*, paid based upon a successful outcome. PFOF 127-128.   Had Allcare been successful, Mr. Singer would have received a windfall ranging from $840,000 to $1,470,000.   PFOF 130.   Notably, the Texas Disciplinary Rule of Professional Conduct 3.04(b) forbids paying witnesses on the outcome of litigation, confirming that Allcare's actions, and that of its counsel, were in bad faith.

These types of actions with regard to witnesses were not limited to Mr. Singer.  It hired as a purported "expert," Gerald Kurtyka, an individual who had been a key fact witness as to the <u>un</u>enforceability of the '105 Patent in the <u>Cerner</u> Action previously before this Court (and in which Mr. Hill was involved as counsel to one of the defendants).  PFOF 152-156.  By paying Mr. Kurtyka $70,000+, Allcare achieved two things.  First, it made Mr. Kurtyka unavailable to Highmark for informal discovery of the key facts Highmark needed to prepare its case on unenforceability thus forcing Highmark to undertake indirect, and far more expensive avenues of discovery.  PFOF 156.  Second, having received $70,000+, it was then Mr. Kurtyka's job to prepare a new <u>fact</u> declaration in an attempt to rebut the facts – wholly adverse to Allcare –

- 13 -

previously set forth by Mr. Kurtyka in a 2000-circa declaration submitted in the <u>Cerner</u> Action. PFOF 154.  Not surprisingly, the new declaration was prepared with the close supervision of Allcare's counsel, Mr. Hill.  *Id.*   After Allcare's devious tactic was disclosed during Mr. Kurtyka's deposition, Allcare withdrew its use of the new Kurtyka declaration and even dropped him as an "expert."  PFOF 163-164.  As additional interference with discovery, Allcare also precluded Highmark from fair access to another expert used by a defendant in the <u>Cerner</u> Action, Reed Gardner, by making payments to Mr. Gardner so that he would not be available to Highmark to discuss a prior art system developed by Mr. Gardner that may have invalidated the '105 Patent.  PFOF 157-161.  Both of these actions patently violate the principals of Texas Disciplinary Rule of Professional Conduct 3.4(a).

     5.     <u>Allcare Failed to Cooperate in Document Production</u>

Allcare's counsel, Mr. Hill, had full knowledge of the existence of the 2000 Kurtyka declaration that was damaging to Allcare's case, *see* Dckt. No. 422, at 12-15, 22-24.   Yet, Allcare, through Mr. Hill, intentionally withheld it from production to Highmark until after the court-ordered mediation occurred so that Highmark would not have the facts adverse to Allcare available during mediation.  PFOF 165-172.  This type of bad act was pervasive on Allcare's part throughout the litigation.   For example, Allcare's counsel also tried to prevent document discovery by Highmark of third parties by representing to Highmark that all documents had been obtained by Allcare from these parties and previously had been produced by Allcare.  PFOF 173-178.  When Highmark pushed the issue through more expensive discovery measures, it learned that nearly 2000 pages of documents important to Highmark's case had not, in fact, been produced previously.  PFOF 175, 177.  This sort of sharp discovery practices make this case exceptional.  *See* <u>Ashcroft v. Paper Mate Mfg. Co.</u>, 434 F.2d 910, 915 (9th Cir. 1970) (unnecessarily prolonging of taking depositions by improper tactics and refusal to produce documents upon subpoena were reasonable grounds for finding an "exceptional" case).

- 14 -

As with Allcare's actions vis-à-vis Messrs. Singer and Kurtyka, courts have also found cases "exceptional" where patentees and their expert witnesses exhibited willful misconduct during litigation by purposely concealing critical evidence to support or contradict patent infringement.  For example, in <u>Eltech</u>, the court found an exceptional case where the plaintiff withheld as privileged test reports supporting an "inference not favorable" to infringement.  903 F.2d at 811.  In <u>Loctite</u>, 667 F.2d at 584,  the court found an exceptional case in part because plaintiff "concealed a suspicion, later proven to be fact" that the test data allegedly supporting infringement was tainted and unreliable.

Still other discovery abuses were engaged in by Allcare.  First, Allcare refused to produce <u>in discovery</u> its damages expert report (of Corky Hoffman) in one of the Prior Actions, arguing that it was strictly prohibited from doing so by an earlier entered Protective Order (the "<u>Trigon</u> Order").  PFOF 197-202.  Yet Allcare, through its *pro hac vice* counsel, Mr. Steven Hill, used this Hoffman Report before the instant action was commenced as a tool in its efforts to convince Highmark to take a license.  PFOF 204, 206.  Pre-litigation, Mr. Hill affirmatively stated that <u>no</u> bar to its production existed.  PFOF 205.  But after litigation began, Allcare—as it did in so many other instances—claimed that production was prohibited by a prior protective order. PFOF 197-202.

Additionally, Allcare withheld from Highmark critical documents related to Allcare's licensing practices despite Highmark's repeated efforts to obtain them.  For years, Allcare claimed that "all" responsive documents had been produced and Highmark had no recourse but to believe affirmative representations by counsel.  In fact, its counsel Mr. Hill, had these very documents in his personal files and simply withheld them from production to Highmark until after the close of discovery.  Then, after Allcare's expert decided to rely upon these documents, Mr. Hill produced 51 documents critical to Highmark's defense of Allcare's damage claim. PFOF 179-186.  Such behavior indicates that Allcare was sharing documents with its expert that it not refused to produce in discovery and actually even denied existed.  Once disclosed after

- 15 -

discovery closed, Highmark advised Allcare that it would move, in limine, to exclude Allcare's use of all related documents at trial.  PFOF 186-187.

6.      Allcare Made False Representations in W.D.Pa That Caused
        This Action to be Transferred, Increasing Expense to Highmark

As noted above, Allcare made false representations to Judge Lancaster of the Western District of Pennsylvania regarding the extent of control Allcare exercised over Seaport Surveys' actions within Pennsylvania and that District.  PFOF 189-195.  As a result, the litigation fees and expenses incurred by Highmark were increased significantly, including but not limited to adding the additional cost of local counsel in the Northern District of Texas.  PFOF 196.  But as discussed here, and confirmed in the PFOF, the information regarding Allcare's use and control of Seaport Surveys was wholly within the control of Allcare and Mr. Shelton at the time of the misrepresentations to Judge Lancaster.   Federal Rule of Civil Procedure 11 mandates a reasonable inquiry into the control by Allcare of the Seaport Surveys prior to representing to Judge Lancaster in court filings that there was no control of Seaport Surveys by Allcare. Allcare's counsel, Mr. Hill, either did not do so or elected to make a knowingly false and misleading statements to the Court in contradiction to the actual facts.

7.      Allcare Permitted Its Counsel to Falsely Represent Himself to Be a Patent Lawyer

In an apparent attempt to give more credibility to the argument of its counsel, Allcare repeatedly permitted its counsel, Mr. Hill, to hold himself out to this Court as being a registered patent lawyer, when he is not.   PFOF 214-221.  Mr. Hill made this representation in oral argument on claim construction, during the summary judgment hearing and, based upon a filing by retired district court judge Joe Kendall, apparently to Mr. Kendall to induce him into making what turned out to be a brief appearance in this action.  *Id.*  Falsely representing oneself to be a patent lawyer is a violation of Texas Disciplinary Rule of Professional Conduct 7.04.

8.    The Totality of Allcare's Actions Meets The Standards of Section 285

As shown above, Allcare is guilty of a pattern of bad faith litigation that has prolonged discovery, increased costs, and which illustrate Allcare's vexatious and unjustified purpose for bringing suit as being to force Highmark to buy a license, just as Allcare has done thirty times before to other "target companies," even though Highmark did not infringe.  PFOF 73-79.  When a losing party "could have greatly alleviated the cost and extent" of a suit and where claims should never have been made in the first place, a finding of an exceptional case is proper. Loctite, 667 F.2d at 585 (upholding attorney fees award because plaintiff unjustifiably impeded a three-year discovery process).

As confirmed by Allcare's withdrawal of Claim 102, and the Court's finding non-infringement of Claim 52 and 53 on summary judgment, this was not a close case.  (As shown in PFOF 50-55, the opinion of Allcare's expert did not support Allcare's infringement arguments). Allcare and its counsel engaged in vexatious litigation.  Both failed to perform a proper pre-filing investigation because Allcare's pre-filing review did not address individual elements of Claims 52 and 102 and was not performed by a qualified individual.  PFOF 91-119.  The pre-filing failure to evaluate whether individual claim elements were found in Highmark's system is a fundamental defect in Allcare's investigation.   An exceptional case finding and award of attorney's fees under Section 285 is proper.

As in Mathis, "a wrong has been done.  [Allcare] has severely injured [Highmark], having forced it to defend, at monstrous expense, its right to freely compete, subjecting [Highmark] to a totally unwarranted suit…."  857 F.2d at 753-54.  The actions described above confirm that Allcare asserted a meritless case without reasonable justification and then engaged in a pattern of magnifying expense and lengthening this action with a goal of wearing down Highmark until it bought a license that it so plainly does not need.  As set forth supra, Allcare is a patent troll that provides no product or services to society; it simply sues to obtain licenses of its patent.   It has shifted the economic burden of its licensing-by-litigation strategy to its

contingent-fee counsel.  It would be an injustice if the cost of Allcare's bad faith litigation tactics now had to be borne by Highmark as well.

## C.   **An Award of Fees Is Appropriate Under Rule 11 and This Court's Inherent Powers**

### 1.   Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 11 also permits this Court to sanction Allcare in the nature of assessing expert fees and expenses against Allcare.  Amstead, 23 F.3d at 378-79.  The Advisory Committee Notes to the 1993 Amendments provide that:

> [t]he sanction should be imposed on persons – whether attorneys, law firms, or parties – who have violated the rule or who may be determined to be responsible for the violation . . . .

> The revision permits the court to consider whether other attorneys in the firm, co-counsel, other law firms, or the party itself should be held accountable for their part in causing a violation.

Id.  See also United Stars Indus., Inc. v. Plastech Engineered Prods., Inc., 525 F.3d 605, 609 (7th Cir. 2008)   (J. Easterbrook) ("Rule 11 also allows imposition of sanctions on law firms as well as individual lawyers.")

Sanctions may be assessed for violations of the Rule 11 prohibition against making representations for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," Rule 11(b)(1), or that are "based upon factual contentions without sufficient evidentiary support," Rule 11(b)(3).  If representations are made to the Court in violation of the obligations of Rule 11, sanctions are appropriate "to deter repetition of the conduct or comparable conduct by others similarly situated."  Rule 11(c)(4).  As with Section 285, this Rule contemplates that even if a claim is not frivolous when filed, "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist in that contention."  Advisory Committee Notes to the 1993 Amendments.

As shown above, the record amply illustrates that Allcare had no basis on which to assert infringement and it maintained this suit long after the April 2004 inspection that confirmed that there, in fact, was no basis for Allcare's claims.   PFOF 32, 56, 83-89, 96-127.   Yet Allcare continued to press infringement in the hopes of forcing a settlement favorable to Allcare before this action could be decided on the merits.   Rule 11 sanctions are appropriate where, as here, plaintiff's counsel relied on patentee's lay opinion that defendant's product infringed and the patentee submitted misleading and false statements about the defendant's product.   S. Bravo Sys., 96 F.3d  at 1375-76.

Further, the Advisory Committee Notes to the 1993 Amendments confirm that a court may consider in assessing Rule 11 sanctions whether a party or person has engaged in similar conduct in other litigation.   Id.   This Court may fairly look to the Prior Actions to determine whether Allcare's behavior shows a pattern – and it does.   As one example, Allcare has demonstrated a pattern of shifting claim construction by arguing that the "preamble" of the asserted claims[3] either is or is not a "limitation" of the claim language, depending on the system of the target company.   PFOF 148-151.   Additionally, Allcare has repeatedly relied in each Prior Action upon its compensated "for success" expert, Charles Singer, in clear violation of Texas Rule of Disciplinary and Professional Conduct 3.4(b).   PFOF 127-131.

The Federal Circuit addressed the issue of the applicability of Rule 11 to allegations of patent infringement that are asserted and then withdrawn in litigation, as Allcare did with Claim 102.   In View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981 (Fed. Cir. 2000), the plaintiff had filed a declaratory judgment action as to non-infringement of one patent.   In response, defendant's counterclaims asserted infringement of eight patents.   After View

---

[3]   The "preamble" is a "limitation" if it is necessary to give life, meaning and vitality to the claim, Dckt. No. 367 (Cl. Const. Rpt.)  at 10, and because they provide the antecedent basis for the structure recited in the body of the claims (such as "said systems," "said database," etc.).   See Pitney Bowes, Inc. v. Hewlett Packard Co., 182 F.3d 1298, 1306 (Fed. Cir. 1999); Rapoport v. Dement, 254 F.3d 1053, 1059 (Fed. Cir. 2001).

Engineering filed a motion for summary judgment, the defendant withdrew its claims based upon five of its patents.  In affirming an award of fees under Rule 11, the Federal Circuit held:

> In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement.   Failure to do so should <u>ordinarily</u> result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances.

*Id*. at 984-85 (emphasis added).   Allcare provided <u>no</u> explanation for its withdrawal of Claim 102, much less a "sound" explanation.

2.    <u>This Court's Inherent Powers To Award Fees</u>

In <u>Hall v. Cole</u>, 412 U.S. 1, 15 (1973),  the United States Supreme Court held that federal courts, in the exercise of their <u>equitable powers</u>, may award attorney's fees to a successful party when his opponent has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."  The underlying rationale of such "fee shifting" is, of course, punitive, and is triggered by "bad faith" on the part of the unsuccessful litigant.  *Id*. at 1946 (citations omitted).   This inherent power to award fees is in addition to the ability to issue sanctions and award fees under Section 285 and Rule 11.   *See* <u>Interspiro USA, Inc. v. Figgie, Int'l.</u>, 815 F.Supp. 1488, 1520 (D. Del. 1993), and <u>Amstead</u>, 23 F.3d at 378." ("statues governing sanctions do not displace the federal courts' inherent power to impose sanctions for bad faith and vexatious conduct").

Allcare's actions enumerated above, and those of Mr. Hill and his firm, all support the exercise of this Court's inherent power to award Highmark its attorney fees beginning when <u>Allcare sent its first cease and desist letter</u> to Highmark.  The pattern of bad acts that ran through the Prior Actions and Allcare's year-long negotiations with Highmark permit this Court to award all or a portion of those attorney fees incurred by Highmark leading up to the commencement of this action under this Court's inherent power to assess fees for bad litigation tactics.

- 20 -

D.   **Highmark's Fees and Costs Were Reasonable**

In accordance with Fed. R. Civ. P. 54(d), this Motion has been timely filed within 14 days of entry of Judgment, and it sets forth the appropriate statute, rule, and grounds entitling Highmark to an award of fees and expenses.  As permitted, Highmark has provided the Court with the "amount sought or . . . fair estimate of it."  Fed. R. Civ. P. 54(d)(2)(B).  The Court now may "decide issues of liability for fees before receiving submissions on the value of services," Fed. R. Civ. P. 54(d)(2)(c) (emphasis added).  To this end, Highmark has submitted an estimate of the reasonable fees that it incurred and, should the Court wish to review invoices prior to determining whether to award fees, Highmark is prepared to submit under seal copies of invoices for services and expenses supporting these fees, redacted as necessary to protect any privileged information.  Highmark has refrained from submitted these copies at this time simply because the shear volume of invoices for this 5½ year long complex litigation runs to more than a thousand pages, and, at this time it is unclear whether the Court will award Highmark its fees related to pre-filing work and work related to Claim 52 as well as Claim 102.  Thus,  Highmark submits that it will be more economical and less confusing to determine the underlying issues of whether fees are awardable first and then to assess the precise amount to be awarded. PFOF 223-224.

A prevailing party is not limited under Section 285 solely to those amounts paid for purely legal services of counsel but is entitled to reimbursement of any legitimate expenses that it was unfairly forced to pay in defense of the suit.  Mathis, 857 F.2d at 753-54; Fed. R. Civ. P. 11(c)(4).  *See also* Central Soya, 723 F.2d at 1578); Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1068 (Fed. Cir. 1983).

At a minimum, Highmark is entitled to recover its fees and expenses related to infringement and invalidity of Claim 102.  Highmark "would not have incurred any of the fees generated in defense of this claim," including asserting invalidity, had Allcare not raised its allegations as to Claim 102 only to withdraw them without notice and without explanation after

Highmark submitted its motion for summary judgment of noninfringement. *See* Brasseler, U.S.A.I., L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1386 (Fed. Cir. 2001). But Highmark submits that the frivolous nature of Allcare's assertion as to Claim 52, the vexatious litigation tactics of Allcare and its counsel, together with the long history of misusing the courts in a licensing-by-litigation strategy, permit an award of all fees and expenses associated with Highmark's defense.

The pattern of misrepresentations and withholding of essential information is so egregious that this Court should, under its inherent powers, award the entirety of Highmark's fees directed to defending against Allcare's allegations commencing with the April 16, 2002 letter from Mr. Shelton to Highmark that demanded Highmark buy a license from Allcare. This letter was based on the insufficient survey performed by Seaport Survey and Mr. Shelton's own uninformed opinion (PFOF 96-102, 108-113). As a result of these letters, Highmark engaged in a year-long effort to reason with Allcare and avoid the necessity of litigation. PFOF 84. It analyzed Allcare's patent, its infringement contentions, and found factual information to support defenses to Allcare's threats, tried to unwind the difficult course of Allcare's constantly shifting legal strategies, factual allegations and claim construction in its many litigations and threats to third parties. Most importantly, to assess the validity of the '105 Patent, Highmark was forced to undergo the very time consuming and expensive process of reconstructing the history of Highmark's own pre-authorization and claims processing systems beginning with the late 1960s. This took untolled hours of time from employees of Highmark at all levels of management and staff. PFOF 84.

1.     Highmark's Attorney Fees and Expenses Are Reasonable

Based on the widely accepted American Intellectual Properly Law Association 2007 Report of the Economic Survey (the "AIPLA survey"), the median litigation costs for a patent infringement case in Texas with more than $25 million at risk (as was this one, PFOF 185) was $5 million inclusive of all costs, but a substantial portion of cases cost $7 million or more.

- 22 -

PFOF 226.  Highmark's costs of approximately $4,875,240 fits squarely in this accepted range for patent litigation, and are thus reasonable.

The AIPLA survey of attorney[4] billing rates for litigators in patent cases show median ranges between $407 per hour for Texas and $507 per hour for full time intellectual property lawyers in firms with more than 150 lawyers.  PFOF 229.  Fees charged to Highmark range from $190/hour to $510/hour, PFOF 228-229, and confirm that Highmark's rates are in accord with the traditional rates charged in patent infringement actions.  The cost of retaining local counsel must be borne by Allcare as well, since it was Allcare that moved to dismiss this case in the Western District of Pennsylvania causing Highmark to need local counsel in the Northern District of Texas.  PFOF 3.

Highmark's expenses in defense of this litigation include such things as analysis of legal and factual arguments, investigation of and evaluation of prior art references, assessing and retention of experts, document and exhibit preparation, copying services for discovery, court filings and hearings, secretarial services and overtime, travel, lodging and meals for discovery and hearings in Texas, litigation and technology support in preparation of exhibits, as well as fees and costs for the Special Master, all of which are reasonable and appropriate expenses under Section 285, Rule 11 and the Court's inherent power.  *See, e.g.,* Mathis, 857 F.2d at 757, 759.

2.      Expert Witness Fees Were Reasonable And Warranted

Highmark seeks recovery of fees and expenses expended for its experts.  As typically required in complex patent cases, the use of experts was necessary to properly defend against Allcare's own experts and claims of infringement.  Allcare juggled six experts during this case, utilizing some early on before switching to others later in this action. PFOF 162-164.  Highmark, in contrast, retained only two experts throughout the entire litigation, one technical expert and

---

[4]   A district court may properly consider such surveys.  Mathis, 857 F.2d at 755-56.

one damages expert, to defend against the numerous and ever-changing experts designated by Allcare. PFOF 233-234. The fees and expenses incurred for such experts were only $378,649, which are on their face and given the complexity of this action and the damages demanded by Allcare, reasonable. PFOF 234. Section 285 does not contemplate an award of expert fees but, as noted above, expert witness fees <u>are warranted</u> under the Court's inherent power where a party abuses the judicial process through such tactics as filing false pleadings, discovery abuse, and harassment. <u>Amsted</u>, 23 F.3d at 378-79. As set forth *supra*, Allcare's vexatious conduct, warrant the appropriate fees under the Court's inherent powers.

   3. <u>Post-Judgment Interest Is Appropriate</u>

   Post-judgment interest is appropriate from the date of this Court's judgment awarding attorney fees pursuant to 28 U.S.C. §1961, *see* <u>Mathis</u> 857 F.2d at 759-60 (citations omitted), and Highmark asks this Court to award post-judgment interest.

## IV. <u>CONCLUSION</u>

   As shown above, Allcare's frivolous claims, scorched-earth tactics, and use of litigation as a club to force licenses, have magnified the cost and time to trial of this action. These are and likely will continue to be the modus operandi of Allcare and its counsel. The best, fastest and most appropriate way to curb these kinds of tactics is to enforce the penalties contemplated under 35 U.S.C. § 285, Federal Rule of Civil Procedure 11, and this Court's inherent power to assess sanctions.

      Respectfully submitted,


     By: <u>**/s/ Cynthia E. Kernick**</u>
       Cynthia E. Kernick
       Pa. ID #43912
       Kevin S. Katona
       Pa. ID #91651

REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
(412) 288-4176

Eugene LeDonne
N.Y. ID No. 2923258
REED SMITH LLP
599 Lexington Avenue
29th Floor
New York, NY, 10022

and

Craig B. Florence
Texas State Bar No. 07158010
Robert Slovak
Texas State Bar No. 24013523
GARDERE WYNNE SEWELL L.L.P.
1601 Elm Street, Suite 3000
Dallas, TX 75201
(214) 999-3000

Counsel for Plaintiff Highmark, Inc.

Dated:  October 28, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2008, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Joseph F. Cleveland, Jr.
Brackett & Ellis, P.C.
100 Main Street
Fort Worth, Texas  76102-3090

Steven G. Hill, Esquire
Hill, Kertscher & Wharton, LLP
3350 Riverwood Parkway
Suite 800
Atlanta, Georgia  30339

R. Darryl Burke
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201


*/s/ Cynthia E. Kernick*
Counsel for Plaintiff Highmark, Inc.