**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

| | | |
|---|---|---|
| Highmark, Inc., | § | |
| | § | |
| Plaintiff, | § | Civil No: 4:03 CV-1384-Y |
| | § | |
| v. | § | Judge Terry R. Means |
| | § | |
| Allcare Health Management Systems, Inc., | § | |
| | § | |
| Defendant. | § | |

**REPLY OF HIGHMARK INC. TO ALLCARE'S RESPONSE IN
OPPOSITION TO HIGHMARK'S MOTION
FOR EXCEPTIONAL CASE FINDING AND AWARD OF
ATTORNEY FEES AND EXPENSES**

Cynthia E. Kernick
Pa. ID No. 43912
Kevin S. Katona
PA ID No. 91651
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
(412) 288-4176/3848

Eugene LeDonne
N.Y. ID No. 2923258
REED SMITH LLP
599 Lexington Avenue
29th Floor
New York, NY 10022
(212) 521-5402

and

Craig B. Florence
Texas State Bar No. 07158010
Robert Slovak
Texas State Bar No. 24013523
GARDERE WYNNE SEWELL L.L.P.
1601 Elm Street, Suite 3000
Dallas, TX 75201
(214) 999-3000

## TABLE OF CONTENTS

**Page**

**A.** **Allcare Admits Failure To Reasonably Investigate**.......................................................2

**B.** **Dr. Holland's Opinion Was Insufficient to Prove Infringement**..............................5

**C.** **Bad Faith Litigation Tactics** ...........................................................................................6

Res Judicata and Collateral Estoppel .................................................................................6

Shifting Claim Construction ...............................................................................................6

False Representations to Judge Lancaster...........................................................................7

Misrepresentations On Experts ...........................................................................................7

Withholding the Corky Hoffman Reports............................................................................7

The "Five Motions".............................................................................................................8

Failure to Adequately Produce Documents ........................................................................8

Settlement Discussions .......................................................................................................8

**D.** **An Award of Fees Is Appropriate Under Rule 11 and This Court's Inherent
Powers**...............................................................................................................................9

**E.** **Conclusion** .......................................................................................................................10

# TABLE OF AUTHORITIES

Page

## CASES

Fort James Corp. v. Solo Cup Co., 412 F.3d 1340 (Fed. Cir. 2005) .............................................. 4

Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc., 2002 WL 234289 (E.D. Pa. Feb. 15, 2002) ............................................................................. 6

In re Silica Prods. Liability Lit., 398 F. Supp. 2d 563 (S.D. Tex. 2005) ....................................... 4

LaserDynamics, Inc. v. Asus Computer Int'l., No. 2:06-CV-348, 2009 WL 153161 (E.D. Tex. Jan. 21, 2009) ....................................................................... 4

Serio-US Indus. v. Plastic Recovery Techs. Corp., 459 F.3d 1311 (Fed. Cir. 2006) ......................................................................................................... 10

View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981 (Fed. Cir. 2000) .......................................................................................................... 5, 9

Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc., 231 F.3d 1339 (Fed. Cir. 2000) ......................................................................................................... 10

## RULES

Fed.R.Civ.P. 11 ................................................................................................................. 6

Fed.R.Civ.P. 11(c)(4) ....................................................................................................... 9

Four lines into the Opposition, Allcare Health Management Systems, Inc. ("Allcare") makes its <u>first untrue</u> statement:  Allcare "never accused Highmark of infringing [Claim 1] either before or during this suit."  Both Allcare's Answer and Counterclaim, Doc. No. 22 at ¶ 21 (Dec. 16, 2003) and its first Amended Answer and Counterclaim, Doc. No. 35 at ¶ 20 (Jan. 30, 2004) <u>specifically allege infringement of Claim 1</u>.  A few lines later, Allcare makes its <u>second false</u> claim:  "Allcare's patent litigation counsel discussed the accused system [*i.e.* Highmark's] with experts in the field to confirm his own determination of infringement."  In support, Allcare cites to the Declaration of Steven G. Hill ("Hill Dec.") A.162-63[1] (at ¶¶ 104-105).  Mr. Hill represents that he discussed Highmark's system with Allcare's experts Dr. Holland and Mr. Kaliski <u>before</u> asserting infringement.  *Id.*  Yet during discovery, these experts confirmed they <u>were not</u> consulted as to <u>Highmark's</u> system until September 2004 and April 2004, respectively, <u>long after</u> Allcare asserted infringement.  *See* SA 01–10.  This may explain Mr. Hill's repeated failures to provide documentary support for his six-year old recollections.  A look at the underlying <u>facts</u> confirms that Mr. Hill's recollections are, charitably speaking, merely wishful.  His self-interested declaration should be dismissed as unsupported and inadmissible rhetoric.

The Robert Shelton Declaration (the "Shelton Dec.") that was used in an attempt to rebut false representations to Judge Lancaster of the Western District of Pennsylvania, Opp. 22, suffers from the same failure to provide documents whose contents are "recalled" by Mr. Shelton.  A review of only some of these documents confirms that Shelton, too, makes material misrepresentations of fact regarding his control over the actions of Seaport Survey, *see* infra at 7.

Messrs. Hill and Shelton are both interested parties to Highmark's Motion; it is they whose bad acts justify Highmark's Motion.  Yet, as shown by the examples above, their

---

[1]   References to the record beginning with "A" refer to Allcare's Appendix in Support of its Opposition (filed under seal on January 7, 2009).  References to "HA" are to Highmark's original appendix and "SA" are to Highmark's Supplemental Appendix for which leave to file has been contemporaneously sought with the filing of this Reply.

declarations are based largely on the purported contents of documents <u>not submitted</u> to the Court despite the requirement of Local Rule 7.1(i)(1) ("a party who relies on documentary…or non-documentary evidence…to oppose a motion must include such evidence in an appendix").  Most egregiously, the Hill Dec. presents generalities that Allcare heavily relies upon concerning an alleged opinion by Mr. Hill for which there is a dearth of <u>hard proof</u>.

To muddy the waters, the disjointed and scattershot Opposition relies on <u>claim construction</u> charts prepared in the *Trigon* action even though Highmark's Motion is predicated upon Allcare's frivolous assertions of <u>infringement</u>.  The Opposition confuses facts related to Claim 1 with those related to Claim 52, confuses applicable law governing Fed.R.Civ.P. 11 with that governing 35 U.S.C. § 285, and repeatedly confuses the timing of events to support its arguments.  (*e.g.* A0140, ¶ 12.)  To benefit its position, Allcare <u>again</u> falsely suggests that there is a legal relationship between Trigon and Highmark and that their systems are the same.  Opp. 2.  Allcare <u>knows</u> this to be untrue.  *See* SA 011 (Mr. Shelton to Seaport Surveys: "there are multiple entries for 'Blue Cross Blue Shield' which is appropriate since there's at least one such healthcare group per state and <u>these are separate entities</u>" (emphasis added)), and PFOF 132.

Finally, Allcare does not dispute applicable legal standards.  It simply cites, regardless of relevance, a litany of Federal Circuit cases <u>summarily</u> adopting a district court's decision not to assess fees.  When read, these cases actually <u>confirm Highmark's</u> position.  Allcare is betting that this Court will not look behind its arguments for record and case law support.  Allcare is betting that its repeated declarations of good faith will outweigh the facts clearly proven in Highmark's moving papers.  Highmark respectfully asks the Court to ignore Allcare's hyperbole and self-serving declarations and base its decision on the <u>documented</u> record.

## A.    <u>Allcare Admits Failure To Reasonably Investigate</u>

The Opposition continues Allcare's unmitigated efforts to pretend that Highmark and Trigon are related companies with similar systems.  Its argument is akin to the following fallacious syllogism:  "I examined this Dell computer and believe it infringes.  Gateway also

makes a computer, therefore Gateway must infringe."  Allcare's intractable fascination with the Trigon action—one that <u>did not</u> result in a finding of infringement—has exponentially expanded the cost of this action by forcing Highmark to file repeated motions designed to clarify the lack of significance of the claim construction rulings in *Trigon* ("Trigon Rulings").  A0169 at ¶131(b) – (f).  Critically, this Court <u>never</u> held those rulings to be persuasive authority despite Allcare's repeated incantations to the contrary.  A0150, ¶ 61:

> The Court notes, however, that all references to the Trigon rulings will be <u>evaluated</u> purely for persuasive effect and will not be granted precedential weight. The Court's present ruling does not, in any way, affect the right of the Court or any other entity given judicial authority during the pendency of this action to agree or disagree, wholly or in part, with the rulings made in the Trigon action. Those entities sitting in judicial authority over the above-styled and numbered cause retain their right in full to preside over this action as they deem appropriate and necessary, regardless of the decisions made by the district court for the Eastern District of Virginia in the Trigon action.

*See* Doc. 245 at 6 n.7 (emphasis added).

Rather than litigating its case against Highmark, Allcare tried to make this litigation about what did or did not happen in the Trigon Action and the ghost of *Trigon* haunts this case still.  Now, Allcare <u>admits</u> that it evaluated whether Highmark infringed <u>based on Allcare's understanding of the Trigon system</u>, rather than Highmark's own system.  *See* A0140 (Hill Dec. at ¶12) ("Early in discovery, Allcare provided Highmark with a claim chart in this case (A5-21) <u>which was of our pre-filing analysis of infringement against Trigon</u>…") (emphasis added); and Opp. 24 n.25 citing A0142 ¶ 22 (Dr. Holland investigated the <u>Trigon</u> system).  Rather than undercutting the clear and convincing evidence offered by Highmark, Allcare's efforts to shoehorn Allcare's conclusions vis-à-vis Trigon into its alleged pre-filing investigation of Highmark underscores why this case is exceptional.

Allcare never explains why it commissioned a survey but didn't include questions on whether limitations of Claim 102 or Claim element 52(c) existed in Highmark's system. PFOF 99-102.  It is more than a little ironic that Allcare now relies so heavily on the underlying facts of *Trigon* because Allcare never proved in court that the Trigon system infringed <u>any</u> claim

- 3 -

of the '105 Patent and analysis of that system thus is not exculpatory.  PFOF 77-79.  Moreover, Allcare refused to produce in discovery <u>any</u> information about the Trigon system, arguing that Trigon had designated its system information to be confidential, a fact confirmed by Trigon in filings to this Court (Doc. 299 at 2).  Allcare cannot <u>now</u> reap a benefit from disclosure in apparent disregard of the Trigon Protective Order (*see* Opp. at 2, n.4; A0139 at ¶ 10) of long withheld information or rely upon Mr. Hill's unsupported <u>opinion</u> that the two systems are the same.  The pernicious nature of Allcare's actions proves this case is, in fact, exceptional.

Its reliance on the Trigon action seeks to mask Allcare's failure to provide any documentary evidence <u>dis</u>proving its prior admission that its <u>only</u> pre-filing infringement analysis was done by the lay Mr. Shelton.  *See* PFOF 92-102.  Nor does it competently explain the absence of the alleged Hill analysis on its privileged log and why <u>no documents</u> are submitted <u>now</u> to prove the existence of the analysis.[2]  A party cannot use an opinion of counsel to shield it from liability but then refuse to produce the opinion under the guise of "work product" as Allcare continues to do, even now (Opp. at 1 n. 3).  Once a party announces that it will rely on advice of counsel, any privilege or work product protection is waived.  <u>Fort James Corp. v. Solo Cup Co.,</u> 412 F.3d 1340, 1349 (Fed. Cir. 2005).  Because Allcare refused (and continues to refuse) to produce the opinion, Allcare cannot rely upon it in opposing Highmark's Motion.  <u>LaserDynamics, Inc. v. Asus Computer Int'l.,</u> No. 2:06-CV-348, 2009 WL 153161, at *3 & n.3 (E.D. Tex. Jan. 21, 2009) (parties may not rely on documents not produced during discovery); and <u>In re Silica Prods. Liability Lit.,</u> 398 F. Supp. 2d 563, 617 n.93 (S.D. Tex. 2005) (documents must be produced if plaintiff wishes to rely on them).

Allcare's <u>only</u> documentary evidence of any infringement analysis is the <u>November 4, 2004</u> chart created by Mr. Hill (A0005-21).  There is a timing problem with this evidence.  On its

---

[2]  Its only justification is at A0104, 2d para., *i.e.*, the legally improper position that documents containing legal advice, created after 1999, did not have to be identified on any privileged log.

face, it confirms it was created a <u>year</u> **after** Allcare's Answer and Counterclaim first asserted infringement.   Thus, Allcare's only documented evidence of a <u>pre-filing infringement analysis</u> actually <u>post</u>-dates its claim of infringement.   And, as admitted by Allcare, even this analysis was based on Allcare's view of the <u>Trigon</u> system.   Opp. (passim); A0139, ¶ 10.   This slight of hand, time-shifting, litigation tactic is just the sort of bad faith litigation tactic on which Highmark's Motion is based.

In the cases cited by Allcare (in which courts have found a <u>comprehensive</u> pre-filing investigation sufficient to avoid an exceptional case finding), it was because there was nothing more that could have been done, pre-filing, to assess potential infringement.   Here there <u>was</u> <u>more</u> that Allcare could and should have done:  (1) it could have evaluated <u>Highmark's</u> system, instead of relying on its analysis of Trigon, and (2) its survey could have asked whether Highmark's system entered data symbolic of patients' symptoms for tentatively identifying a proposed mode of treatments.   It did neither.   Allcare's complaint that Highmark refused, without litigation, to disclose a highly proprietary system containing confidential patient information (protected by HIPPA) does not excuse Allcare's failure to do <u>any</u> reasonable investigation.   <u>View Eng'g, Inc. v. Robotic Vision Sys., Inc.</u>, 208 F.3d 981, 986 (Fed. Cir. 2000) (failure to perform an infringement analysis is <u>not reasonable</u>).

B.    <u>Dr. Holland's Opinion Was Insufficient to Prove Infringement</u>

Allcare provides no reasonable explanation for its abrupt and summary dismissal of allegations of Claim 102 after 5+ years.   The entirety of Allcare's defense on this issue appears in the Opp. at 16.   There, it pretends that Dr. Holland's testimony vis-à-vis Claim 102 was not defective because (in Mr. Hill's <u>opinion</u>) Dr. Holland had opined that the Highmark system "interconnected" the employee and patient as well as the employer and bank.   Mr. Hill misses the point.   The defect in Dr. Holland's testimony was his <u>admission</u> that required participants did not <u>interact</u> (as opposed to being "interconnected").   (PFOF 35).   Allcare has provided no response

to or explanations for Dr. Holland's failure to find the requisite "interaction" in Highmark's system.

Allcare attempts to justify its unexplained withdrawal <u>with prejudice</u> of allegations of infringement of <u>Claim 102</u> after five years by likening it to Highmark's withdrawal of its counterclaims <u>without prejudice</u> after Highmark won on non-infringement.  As Highmark contemporaneously advised this Court, Doc. 505, this was done in the interests of judicial economy so that Allcare's appeal could proceed.  Allcare's hindsight argument that its withdrawal as to Claim 102 was a "strategic" decision, Opp. at 16, is not supported with a similar contemporaneous explanation.  Its intent should have been noted in response to Highmark's summary judgment motion.  Instead, Allcare simply, and irresponsibly, <u>failed to respond at all</u>. Doc. 455 at 1.  As to Allcare's view that assertions as to Claim 1 didn't belong in this action at all, Opp. at 5, this statement is inconsistent with Allcare's extensive reliance on the Trigon Rulings which found that "[t]he basis of the '105 patent, [is] <u>found in Claim 1</u> . . ."  A0041 (emphasis added).

## C.   <u>Bad Faith Litigation Tactics</u>

Allcare's response to the collection of bad faith litigation tactics is to blame Highmark, make shallow excuses, and cite to cases such as the unreported <u>Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc.</u>, 2002 WL 234289 (E.D. Pa. Feb. 15, 2002) in which the requested § 285 relief was based <u>solely</u> on prior sanctioned actions.  A brief response to Allcare's positions is set forth below.  As shown, when viewed <u>as a whole</u>, Allcare's actions are sanctionable.

Allcare defends its frivolous assertion of <u>res judicata and collateral estoppel</u> (another example of Allcare's selective use of the Trigon case) by admitting that Allcare had not "had the opportunity to research the relevant authorities."  A0167, ¶ 24.  Under Fed.R.Civ.P. 11, Allcare was <u>required</u> to "research the relevant authorities" <u>before</u> asserting these claims.  Allcare characterizes its <u>restating of proposed claim construction</u> as "word-smithing," Opp. 21, even though this Court struck the first round of claim construction briefing because "[r]ecent filings

with the Court [doc. # 270] indicate that the nature of the relief sought in the [Allcare] Motion [for Claim Construction] may have changed." Doc. 271 at 1. This Court would not have struck the extensive briefing if Allcare's changes were "mere word-smithing."

Allcare defended its <u>misrepresentations to Judge Lancaster</u> by relying on Mr. Shelton's undocumented "recollections" about the content of years old emails which recollections are contradicted by the emails themselves. *See* SA 13, 20, 21 (confirming it <u>was</u> Mr. Shelton who identified the companies to be surveyed and the individuals within those companies to be called); and SA 11-19 (confirming that it was Mr. Shelton who prepared the questions to be included in the survey).

To defend against the record confirming that Allcare paid its experts based on success, Opp. 21-22, Allcare provides Mr. Hill's <u>undocumented</u> declaration contradicting Mr. Singer's sworn recollection about Mr. Singer's own compensation. Moreover, even if that compensation was agreed upon <u>prior</u> to litigation commencing as argued by Allcare, A0166 at ¶117, this would be irrelevant because Mr. Singer was <u>still</u> being paid <u>during this action</u> based on revenues collected from accused infringers (i.e., based on success). (Note that Mr. Hill cannot possibly have personal knowledge of events that occurred, as he says, "years before" any litigation, *id.*, because he elsewhere admits to not having been hired until <u>after</u> Allcare began to sue for licenses. *See* A0137, ¶ 4). The claim that other experts were retained pre-litigation, Opp. 21-22, is absurd given Allcare's business model, 10 year history of litigation, and consistent use of the same experts.

Mr. Hill's tortured explanation of why Allcare claimed the <u>Corky (Creighton) Hoffman reports</u> to be subject to the Trigon Protective Order even though they were produced to Highmark is just the sort of hair-splitting that made discovery so expensive. *See* A0186-189. Still claiming at least one report should never have been produced, Mr. Hill provides no explanation for why Trigon did not seek their return when advised by Highmark counsel of their disclosure. *See* HA 384 (at "cc").

- 7 -

As to the <u>Five Motions</u>, Allcare never explains why they were served in the middle of a deposition <u>nor does it deny</u> that it falsely represented to the Court that a Rule 7.1 confer and consult had occurred when it had not.  PFOF 137-139.  Instead, it asks this Court to ignore <u>its</u> actions and instead look to Highmark's discovery motion practice which Allcare then extensively misrepresents.  Opp. at 7.  Only two of the Highmark listed motions, A0169-70, ¶131(g)–(h), were discovery motions.  Half were related to Allcare's continued improper efforts to inject the Trigon claim construction rulings into <u>this</u> case.  *Id.* at (b)–(f).

While defending Allcare's <u>failure to adequately produce documents</u>, Mr. Hill <u>now admits</u> that <u>he did not</u> do his own discovery investigation.  Instead he merely relied upon the work done by an unrelated predecessor counsel.  A0179, ¶ 167.  This is a *per se* violation of the obligations of Rule 26(g)(1)—Mr. Hill was required to perform <u>his own</u> reasonable inquiry and could not simply assume that an unaffiliated prior counsel in an <u>earlier</u> litigation had gathered any documents that <u>Highmark</u> ultimately requested in <u>this</u> action (how could they have done so?).  As to the long withheld Providence documents, Mr. Hill now excuses their production by claiming they were in storage, A0182-83 ¶ 177-178, ignoring Allcare's duty to do a reasonable investigation in response to discovery requests.

Allcare repeatedly injects <u>settlement discussions</u> into its Opposition, *see e.g.* at 5, its logic being that, because Highmark could have been relieved of Allcare's infringement claims by payment of a multi-million dollar ransom (at least $3.75 million, *see* A0142 ¶24), or even by something closer to $1MM (*see* A0120, ¶ 20), Highmark should bear the burden of defending against Allcare's frivolous claims.  If Allcare wants (improperly) to use settlement demands for proof of liability, these are evidence that Allcare <u>knew</u> of the weaknesses in its case because its demands dwindled <u>pre</u>-litigation from $142+ million, HA 127, 113-14, to $780,000 (Opp. 5) <u>after</u> Allcare inspected Highmark's system.  Allcare's claim that Highmark is at fault because it refused to buy a license, A0120, ¶ 20, confirms that Allcare uses litigation to force unnecessary licenses.  Because of this pattern and practice over a period of years and with dozens of

companies, this Court <u>is</u> permitted to consider Allcare's business practices in an award of fees <u>as a deterrence</u>.  Fed.R.Civ.P. 11(c)(4).

So many irrelevant issues (like settlement discussions) are raised by Allcare that it is impossible to address them all because of space limitations.  For example, the number of patent cases instituted by Mr. Hill, A0135, ¶ 1, is not relevant.[3]  The common courtesy of Highmark's counsel is not relevant.  Without supporting documents, whether Allcare orally provided to Highmark details of its infringement position, pre-filing, is not relevant.  Opp. 2.  It is not relevant that Highmark's counsel attended a hearing in *Trigon*.  Opp. 3.

**D.      <u>An Award of Fees Is Appropriate Under Rule 11 and This Court's Inherent Powers</u>**

Allcare's Opposition never competently denies, or explains, the absence of Mr. Hill's alleged infringement opinion on its privilege log.  It does not produce the opinion purportedly prepared by Mr. Hill, or even identify a date on which it was prepared.  Moreover, the Opposition confirms that Allcare simply assumed <u>without any stated basis</u> that Highmark's system was the same as Trigon's.  Opp. 2.  This is not sufficient to rebut Highmark's Motion.

> In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer <u>exactly</u> why it believed before filing the claim that it had a reasonable chance of proving infringement.  Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances.

<u>View Eng'g</u>, 208 F.3d at 986 (emphasis added).  Allcare was required but failed to show "exactly" how it concluded that Highmark's system contained the missing elements of Claims 52 and 102.  Its pre-litigation investigation has not been shown to be reasonable.

---

[3]    Mr. Hill suggests, *e.g.*, that at the time of being retained by Allcare he had extensive experience in filing patent infringement actions.  A 0135.  After an exhaustive search, Highmark has been unable to find a single docket listing Mr. Hill as counsel to a patentee <u>as of the date of the cease and desist letter</u> to Highmark in <u>April, 2002</u>.  (PFOF 83).  His experience subsequently is not relevant.

E.      **Conclusion**

It is not enough, as Allcare asks, to look at each individual bad act and say that a single act, in and of itself, does not justify an exceptional case finding.  Rather, the Court must look to the totality of Allcare's actions, viewed <u>as a whole</u> and <u>documented</u> by the record.  <u>Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.</u>, 231 F.3d 1339, 1347 (Fed. Cir. 2000).  Mere <u>argument</u> by Allcare, in 20/20 hindsight, does not defeat the extensively documented record presented by Highmark.

The substance of Allcare's Opposition, as supported by the Hill and Shelton Declarations confirms Allcare's cavalier approach in asserting and then prosecuting its claims of infringement against Highmark.  Its tone suggests that Allcare believes, even now, that Highmark was obliged to simply "pay-up" rather than fight because Allcare was—ultimately—asking for a royalty <u>less</u> than litigation costs.  Opp. 5.  Allcare's failure to perform a reasonable investigation, fully research legal issues (*e.g.,* res judicata and collateral estoppel), do a proper search for documents (*see* A182-83, ¶ 177-78) and continued sloppy choice of language (Mr. Hill now calls himself a "patent prosecution" lawyer, A0193, ¶ 222, when he is <u>still</u> not) is easily understood when viewed from the vantage point of a patent troll who had succeeded 30 times before in forcing a license.  Because Allcare never <u>expected</u> that it would have to prove its case in court (thinking Highmark would fold its cards first), Allcare did not do a proper investigation, worry about holes in its expert's opinion or concern itself with such mundane issues as properly searching its files for documents to produce.  It has acted in bad faith from the first time it thought about suing Highmark.  Each of the factors illuminated by Highmark favors the discretionary award of fees to Highmark so that "fee shifting may serve as an instrument of justice."  <u>Serio-US Indus. v. Plastic Recovery Techs. Corp.</u>, 459 F.3d 1311, 1322 (Fed. Cir. 2006).

Respectfully submitted,

By: **/s/ Cynthia E. Kernick**
    Cynthia E. Kernick
    Pa. ID #43912
    Kevin S. Katona
    Pa. ID #91651
    REED SMITH LLP
    435 Sixth Avenue
    Pittsburgh, PA  15219
    (412) 288-4176

    Eugene LeDonne
    N.Y. ID No. 2923258
    REED SMITH LLP
    599 Lexington Avenue
    29th Floor
    New York, NY, 10022

    and

    Craig B. Florence
    Texas State Bar No. 07158010
    Robert Slovak
    Texas State Bar No. 24013523
    GARDERE WYNNE SEWELL L.L.P.
    1601 Elm Street, Suite 3000
    Dallas, TX 75201
    (214) 999-3000

Dated:  February 2, 2009        Counsel for Plaintiff Highmark, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2009, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Joseph F. Cleveland, Jr.
Brackett & Ellis, P.C.
100 Main Street
Fort Worth, Texas  76102-3090

Steven G. Hill, Esquire
Hill, Kertscher & Wharton, LLP
3350 Riverwood Parkway
Suite 800
Atlanta, Georgia  30339

R. Darryl Burke
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201


*/s/ Cynthia E. Kernick*
Counsel for Plaintiff Highmark, Inc.