IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

HIGHMARK, INC. §
§
VS. §
§
ALLCARE HEALTH MANAGEMENT § CIVIL NO. 4:03-CV-1384-Y
SYSTEMS, INC. §

ORDER AWARDING ATTORNEYS' FEES

On April 1, 2010, this Court entered an Opinion and Order Granting Motion for Exceptional-Case Finding and Attorneys' Fees (doc. 566). In that order, the Court determined that the instant action is an exceptional case under 35 U.S.C. § 285 as a consequence of certain acts of defendant Allcare Health Management Systems, Inc. ("Allcare").[1] The Court also determined that there is no cause to exercise its discretion to deny the request for fees made by plaintiff Highmark, Inc. ("Highmark").[2] Accordingly, pursuant to Federal Rule of Civil Procedure 54(d)(2), the Court directed Highmark to submit a brief on the reasonableness of the attorney and expert fees it requests. The Court cautioned Highmark to request only those attorney and expert fees that it incurred as a result of the conduct of Allcare and its

---

[1] The Court's exceptional-case finding and related factual findings are set out in detail in the April 1 opinion and order.

[2] To be clear, in the April 1 opinion and order, the Court made a number of other determinations that either are not relevant here or have since been affected by subsequent orders (e.g., Opinion and Order Reconsidering and Vacating Sanctions, doc. 633). For purposes of the instant order, the Court's exceptional-case finding and grant of Highmark's request for attorneys' fees are the important aspects of the April 1 opinion and order, and the subsequent orders do no effect the Court's exceptional-case finding. *See* Op. and Order Vac. Sanct. 47 n.5 (doc. 633).

attorneys as discussed in that opinion and order ("exceptional conduct"). *See Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.*, 549 F.3d 1381, 1390 (Fed. Cir. 2008) (noting that fees for an entire suit are rarely awarded). Therefore, the only issue before the Court is the reasonableness of the amount of fees that Highmark seeks to recover.

I.  Reasonable Attorneys' Fees

   A.  Highmark's Request

Highmark requests $4,846,710.02 in attorneys' fees and $209,626.56 in expenses.[3] Highmark indicates that its "requested fees encompass the entirety of work directed to the asserted patent-related claims and defenses because none would have been incurred if Allcare had acted reasonably before asserting infringement." (Pl.'s Br. 1 (doc. 603).) In other words, according to Highmark, it may request the entire amount of fees and expenses it incurred litigating the patent-related issues in this case[4] and, at the same time, comply with the Court's directive to request only those attorney and expert fees it incurred as a result of the Allcare's exceptional conduct.

Nevertheless, in Volume 3 of Highmark's confidential appendix

---

[3] Highmark already received $88,998.58 in the Bill of Costs (doc. 511).

[4] Highmark does not request any fees for work performed after September 2009 when the Court determined that there was a substantial basis for an exceptional-case finding.

(doc. 602), Highmark provides a chart that divides its fee request into time periods based on events in the litigation in an effort to demonstrate that its fee request, although comprehensive, is tailored to Allcare's exceptional conduct. (Conf'l App. to Pl.'s Br. 1283-85.) And in its brief, Highmark explains how the fees incurred during each time period are attributable to Allcare's improper conduct. (Pl.'s Br. 22-25.) For example, Highmark asserts that the work it performed in response to Allcare's cease-and-desist letter of April 16, 2002, was only necessary because of Allcare's failure to adequately investigate the merits of its infringement claims before threatening suit against Highmark. (*Id.* at 2-3, 23.) In addition, Highmark contends that the fees and expenses it incurred after filing suit in 2003 were the direct result of Allcare's blind reliance upon the Trigon system[5] in filing and maintaining its infringement counterclaims. (*Id.* at 23-24.) Moreover, Allcare attributes the fees it incurred after April 2004 to Allcare's failure to take an expert to inspect the Highmark system and to Allcare's maintenance of its infringement allegations even after this Court's adoption of the special master's claim construction in 2007. (*Id.* at 24.)

---

[5] The Trigon system was the subject of an infringement action that Allcare filed against Trigon Healthcare, Inc., in the United States District Court for the Eastern District of Virginia. The Eastern District granted summary judgment in favor of Allcare, concluding, among other things, that the '105 patent (which was at issue in this case) is enforceable. As the Court explains in more detail in the April 1 opinion and order, Allcare filed and maintained its infringement counterclaims against Highmark based on the Trigon system's alleged similarities to the Highmark system (although Allcare failed to, among other things, inspect the Highmark system prior to filing its counterclaims). (Op. and Order 2-5.)

3

Highmark asserts that application of the hybrid lodestar analysis explained in *Maxwell v. Angel-Etts of Cal.*, 53 F. App'x 561 (Fed. Cir. 2002) supports the conclusion that Highmark's fee request is reasonable. "Under this approach, the [C]ourt first determines a lodestar figure by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate." *Id.* at 568 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)). The Court may then adjust the lodestar figure "based on a variety of factors, such as skill and time required, novelty of the questions involved, fixed or contingent fee basis, results obtained, and/or relationship between attorney and client." *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). If it does so, however, the Court must articulate its reasons for the adjustment. *Id.* (citation omitted). "In cases where the fee application is complex, the district court is not required to do a line-by-line analysis, but may make across-the-board cuts, so long as it sets forth a concise reason for its cuts." *Id.* (citations omitted).

Highmark indicates that some 16,019.67 hours were expended by attorneys working on its case and that an additional 2640.54 hours were expended by non-attorneys. Highmark's three-volume confidential appendix (docs. 600-602) contains detailed documentation of these hours in the way of invoices and billing statements. It appears that these hours date from May 2, 2002, after receiving Allcare's cease-and-desist letter, to September 30, 2009, after the Court determined that

4

there was a substantial basis for an exceptional-case finding. Moreover, the appendix contains numerous redactions for hours that Highmark has excluded from its fee request. According to Highmark, these hours were either not sufficiently related to the patent claims or they were expended by attorneys with limited involvement in the case.

Furthermore, with the exception of two senior partners serving "discrete" roles in this litigation, Highmark explains that it had a special billing arrangement with the law firm Reed Smith LLP ("Reed Smith") "whereby all partners working on this case were billed at a single rate and all associates were billed at a single rate, each increasing slightly as the years progressed."[6] (Pl.'s Br. 13.) Highmark offers the 2003 and 2009 Reports of the Economic Survey of the American Intellectual Property Law Association ("AIPLA") as support for its assertion that its hourly rates are reasonable.[7] (App. to

---

[6] The fees that Reed Smith charged for Highmark's lead counsel, Cynthia Kernick, and partner Eugene LeDonne ranged from $290 per hour in 2002 to $380 per hour in 2009. Further, Reed Smith billed its associates at $190 per hour in 2002 and $265 in 2009. Reed Smith charged $500 per hour for senior partners Fred Colen and James Martin, both of whom served discrete roles in the case. And Highmark's local counsel, the Gardere Firm, charged rates ranging from $235 to $510 (this latter figure was charged by Craig Florence in the last year).

[7] According to the 2003 AIPLA survey, the median hourly rate charged in 2003 by partners practicing patent law with 15 to 19 years of experience was $325, while partners with 20 to 24 years of experience charged a median hourly rate of $348. (App. to Pl.'s Br. 1291.) Associates with 5 to 6 years of experience earned a median of $226 per hour and associates with 7 to 9 made a median of $250 per hour. (*Id.*) Based on the 2009 AIPLA survey, the median hourly rate for partners with 15 to 24 years of experience was $445 per hour, while the average hourly rate for such partners was $467 and the seventy-fifth percentile rate for them was $570. (*Id.* at 1293) The median hourly rate for partners practicing patent law in Texas was $450, the average was $472, and the seventy-fifth percentile amount was $590. (*Id.*) Full-time intellectual property lawyers at firms of more than 150 attorneys charged an average of $599 an hour

5

Pl.'s Br. 1290-94.) As Highmark notes, the Federal Circuit has previously upheld district courts' consideration of the AIPLA surveys. *See, e.g.*, *View Eng'g, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 987 (Fed. Cir. 2000); *Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988). Given the foregoing, the Court will consider the AIPLA surveys in its evaluation of Highmark's fee request.

B. Allcare's Challenges to Highmark's Request

Allcare challenges Highmark's fee request on number of grounds. Initially, Allcare contends that by requesting fees for the entirety of work spent on the asserted patent-related claims and defenses, Highmark has "blatantly disregarded this Court's order and implicitly seeks reconsideration of it." (Def.'s Resp. 1 (doc. 630).) Similarly, Allcare contends that Highmark's broad request does not permit Allcare to respond "point for point as to the reasonableness of Highmark's requested fees and the impact any alleged litigation misconduct by Highmark should have on that amount." (Def.'s Resp. 5.) In its brief, Highmark expressly acknowledges, however, the limitations that this Court imposed on its fee request. Moreover, as previously explained, Highmark has broken down its fee request into various periods and litigation events, explaining how each period corresponds to Allcare's objectionable conduct and providing documentation of its work. Admittedly, Highmark's fee request is expansive. Nevertheless, it

---

and a median hourly rate of $598. (*Id.*) Moreover, the 2009 AIPLA survey indicates that the average litigation costs for patent-infringement lawsuits in Texas with more than $25,000,000 at risk was $6,120,000 and the median was $6,000,000.

is detailed enough to allow this Court to assess its merit and to allow Allcare to respond. Indeed, Allcare does respond to the reasonableness of Highmark's request, taking issue with several specific aspects of the fee request over the course of 1,907 pages. (Conf'l App. to Def.'s Resp. (doc. 631).) And likewise, Allcare manages to argue for limitations based on Highmark's conduct. (Def.'s Resp. 7-9 (asserting that the Court should reduce Highmark's fee award based on Highmark's failure to withdraw its non-infringement claim as to Claim 1).) Thus, the Court does not find persuasive Allcare's argument that Highmark blatantly disregarded the Court's April 1 order and opinion, nor does the Court find merit in Allcare's argument that the broad scope of Highmark's fee request precludes Allcare from being able to adequately respond.

Allcare next challenges Highmark's entitlement to fees for work performed in connection with Highmark's unenforceability and invalidity defenses. Allcare states that Highmark withdrew these defenses before judgment and that the Court did not discuss these defenses in the April 1 opinion and order. In reply, Highmark insists it should recover for time spent on its unenforceability and invalidity defenses because those defenses are "related" to its non-infringement claim, which Highmark asserted in response to Allcare's infringement allegations. Highmark is correct that it should be permitted to recover for the time it spent defending against Allcare's frivolous infringement allegations. However, Highmark is not entitled to recover

for work done in connection with its unenforceability and invalidity defenses because these were not incurred as a direct result of Allcare's exceptional conduct as described in the April 1 opinion and order.

In addition, Allcare contends that Highmark should not be permitted to recover any fees for work performed in connection with discovery. To support this contention, Allcare quotes the portion of the April 1 opinion and order stating "that most of the remaining acts alleged by Highmark appear to be discovery disputes that are likely in a complex and hotly contested case." Def.'s Resp. 7. That comment, however, was in regards to particular discovery-related actions--not discovery-related actions in general. While Allcare is correct that Highmark should not recover for discovery-related work not incurred as a result of Allcare's exceptional conduct, Allcare's contention is too broad. Highmark should be allowed to recover fees for any discovery-related work incurred as a result of Allcare's exceptional conduct.

Allcare also contests Highmark's request for fees incurred in connection with Claim 1.[8] Allcare asserts that "Highmark insisted for over four years that Claim 1 remain a topic of this litigation" despite learning in July 2004 that Allcare had eliminated its counterclaim for infringement as to Claim 1. (Def.'s Resp. 8.)

---

[8] Claim 1 was one of four claims originally at issue in this case, along with claims 52, 53, and 102.

Allcare further asserts that Highmark's refusal to withdraw Claim 1 required claim-construction analysis to occur with respect to that claim when it otherwise might have been avoided. In reply, Highmark states, that it "maintained Claim 1 in this case because it was the 'apparatus' reflection of the Claim 52 'method' and was the most cogently stated [c]laim." (Pl.'s Reply 6.) According to Highmark, the fact that the special master began its claim-construction analysis with Claim 1 is evidence that "maintaining Claim 1 in this action was appropriate." (Pl.'s Reply 6.) Highmark maintained Claim 1 in this action as part of its defense against all of Allcare's infringement allegations (e.g., Claim 502). Therefore, because Claim 1 was the predicate "system" claim for its other "method" claims, Highmark's maintenance of Claim 1 was a permissible part of its defense against Allcare's infringement allegations.

Allcare also contends that Highmark should not receive fees for work performed on its various *Trigon* motions. Highmark points out that Highmark filed multiple motions to strike reference to the *Trigon* rulings and that the Court denied each one. The issue, however, is not necessarily whether Highmark persuaded the Court as to each of its contentions but whether the fees Highmark incurred working on those contentions were "incurred as a result of the conduct of Allcare and its attorneys as discussed in [the April 1] opinion and order." As this Court explained in the April 1 opinion and order, Allcare misused the *Trigon* rulings throughout this litigation and even before.

9

With respect to Allcare's inadequate pre-filing investigation, this Court made the following observations:

> "[t]he rulings in *Trigon* are relevant to the issue of whether Highmark's system infringed the '105 patent only to the extent that Highmark's system and the system in *Trigon* are the same. There is no indication in the record that Allcare investigated Highmark's system or compared it to Trigon's system before filing counterclaims against Highmark. Yet Allcare points to the *Trigon* rulings as justification for its claims of infringement against Highmark."

(Op. and Order 21.) The Court also noted that "once a claim construction was issued in this case, the issue became whether Highmark's system infringed the '105 patent as so construed," and "[t]he *Trigon* rulings became irrelevant." *Id.* at 38. The Court then concluded that Allcare's persistent reliance upon the *Trigon* rulings as support for Allcare's infringement allegations was not without knowing, or at least having reason to know, that the allegations were baseless. *See id.* at 38-39 (citing *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810-811 (Fed. Cir. 1990)). Furthermore, after concluding that Allcare had included in its original answer the defenses of *res judicata* and collateral estoppel despite knowing that they were meritless, the Court stated that "[t]he evidence of these actions firmly convinces the Court of Allcare's use of frivolous and vexatious tactics and supports an exceptional-case finding . . . ." *Id.* at 40. Therefore, the work Highmark performed as a result of Allcare's improper reliance on the *Trigon* rulings or the Trigon system was incurred because of Allcare's exceptional conduct, even if not

10

every contention was successful.

Finally, in addition to challenging the reasonableness of Highmark's fee request, Allcare challenges Highmark's entitlement to fees at all. According to Allcare, Highmark "waited too long to pursue its claim that Allcare's infringement claims were frivolous" and has "not provided the Court with a record upon which it can rule." (Def.'s Resp. 11-12.) But as Highmark points out in its reply, section 285 only allows for the recovery of attorneys' fees in exceptional cases to the prevailing party, a status that cannot be determined until judgment. *See* 35 U.S.C.A. § 285. And with regard to Allcare's challenge to the record, the Court has reviewed Highmark's evidence and finds it both thorough and adequately organized. As previously explained, despite Allcare's assertion to the contrary, much of Highmark's appendix contains an adequate break-down of the fees it requests and an explanation of how those fees relate to Allcare's exceptional conduct. In any event, the Court has already determined that Highmark should recover attorneys' fees under § 285, and the sole issue before the Court is the reasonableness of those fees.

C. Determination of Reasonable Attorneys' Fees

"In determining the reasonableness of the award, there must be some evidence to support the reasonableness of, inter alia, the billing rate charged and the number of hours expended." *In re Electro-Mech. Indus.*, 359 F. App'x 160, 165 (Fed. Cir. 2009) (quoting *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983)). As

previously discussed, Highmark submits the AIPLA surveys in support of its assertion that its requested hourly fees are reasonable. Given that Highmark's hourly rates fall within the ranges in the AIPLA surveys and in light of the fact that Allcare does not appear to challenge the reasonableness of Highmark's hourly rates, the Court concludes that the hourly rates submitted by Highmark's attorneys in this case are reasonable. *See View Eng'g, Inc.*, 208 F.3d at 987; *Mathis*, 857 F.2d at 755-56. Additionally, based on the invoices, billing statements, and charts contained in Highmark's three-volume appendix, the Court is satisfied that the hours Highmark's attorneys have purportedly expended in this litigation are substantiated by the evidence. Therefore, the Court will accept, as a starting place, the lodestar calculation proposed by Highmark. *Cf. Takeda*, 549 F.3d at 1390-91 (affirming the district court's award of $16,800,000 for attorney and expert fees and expenses).

However, an award by the court of the total amount of a fee request is unusual. *Takeda*, 549 F.3d at 1390 (citing *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989)). And Highmark's fee request encompasses slightly more than just the fees it incurred as a result of Allcare's exceptional conduct as discussed in the April 1 opinion and order. Highmark's argument-- that it should recover the entirety of work directed to the asserted patent-related claims and defenses because it would have incurred none if Allcare had acted reasonably before asserting infringement--is

persuasive given how intertwined Allcare's exceptional conduct is with each phase of this litigation. Nevertheless, the April 1 opinion and order notes specific instances of exceptional conduct on the part of Allcare, and those instances are all that Highmark's fee request should cover. Thus, the lodestar figure should be reduced accordingly. *See Maxwell*, 53 F. App'x at 568.

Accordingly, the Court concludes that two reductions are necessary. First, Highmark's fee request should be reduced by the time attributable to its invalidity and unenforceability defenses. The Court did not find exceptional Allcare's assertions that the '105 patent was valid and enforceable. Therefore, the time Allcare spent responding to these assertions are outside the scope of fees allowed by the April 1 opinion and order. Second, Highmark's fee request should be reduced to account for the discovery disputes that the Court found "likely [to occur] in a complex and hotly contested case." (Op. and Order 41.) While much of the discovery-related work that Highmark performed in this case appears to be the result of exceptional conduct on the part of Allcare, some of it is not.

Based on the evidence that Highmark has submitted, it appears that from May 2004 through September 2009, Highmark incurred approximately $60,793 per month in fees. It also appears that around the beginning of this period, particularly in April and May 2004, Highmark performed a significant amount of discovery-related work (e.g., drafting opposition to motion to compel). (Conf'l App. to

13

Pl.'s Br. 185-224.). Further, it is apparent that Highmark spent much of September and October 2007 working on its summary-judgment briefing, which included arguments concerning invalidity. (Conf'l App. to Pl.'s Br. 786-807.) In light of this information, a reduction of $91,189.52 seems fair and proportionate to the amount of work Highmark committed to mere discovery-related work during that time. The Court similarly concludes that an additional reduction of $60,793 is appropriate for the work Highmark spent working on its invalidity and unenforceability defenses.[9]

II. Reasonable Expert Fees

In addition to attorneys' fees, Highmark seeks $378,650.05 in expert fees and expenses. As is evident in the April 1 opinion and order, the Court has already determined that Highmark should recover reasonable expert fees. However, as Highmark notes in its brief, "[s]ection 285 does not provide for the award[ing] of expert fees."[10] *In re Electro-Mech.*, 359 F. App'x at 165 (citing *Amsted Indus. Inc.*

---

[9] These figures are based on the Court's determination that about seventy-five percent of the work performed in the months of April and May 2004 were attributable to mere discovery disputes and that about half of the work it performed in September and October 2007 on its summary-judgment briefing is attributable to the invalidity defense. (Conf'l App. to Pl.'s Br. 185-224, 786-807.)

[10] In the April 1 opinion and order, the Court stated that there was no need to exercise its inherent authority to award fees and expenses in light of its conclusion that the instant action is an exceptional case under § 285 and that sanctions are appropriate under Rule 11. Since that opinion, however, the Court has vacated its imposition of Rule 11 sanctions. Therefore, in the instant order, the Court will invoke its inherent power to award expert fees, as § 285 does not provide for them.

*v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994)). For the Court to award expert fees in excess of the statutory fees under 28 U.S.C. § 1821,[11] it must "invoke its inherent power to impose sanctions." *Takeda*, 549 F.3d at 1391 (citations omitted). Doing so requires either "a finding of fraud or abuse of the judicial process." *Amsted*, 23 F.3d at 378-79 (citations omitted). In other words, because "not every case qualifying as "exceptional" under section 285 will qualify for sanctions under the court's inherent power," the Court must "assess whether this case goes sufficiently beyond 'exceptional' within the meaning of section 285 to justify an award of expert fees as a sanction under the [C]ourt's inherent power." *Id.* (citations omitted).

The Court concludes that this standard is met in the present case. In the April 1 opinion and order, the Court concluded that Allcare had filed and continually pursued frivolous counterclaims even after it became clear that those counterclaims were meritless. (Op. and Order 28-36.) The Court also concluded that Allcare asserted defenses despite knowing they were meritless. (*Id.* at 39-40.) Moreover, the Court based its exceptional-case finding in part on Allcare's use of "vexatious tactics." (*Id.* at 40.) Based on these findings, and pursuant to its inherent authority, the Court concludes that expert fees should be awarded in this case.

---

[11] Highmark already obtained $200.00 in § 1821 witness fees in the Bill of Costs (doc. 511).

As with attorneys' fees, Highmark's expert-fee recovery must be limited to those fees incurred as a result of Allcare's exceptional conduct. After reviewing the evidence, it appears that the vast majority of Highmark's expert fees were incurred while defending against Allcare's allegations of infringement. However, expert Jeremy Noble appears to have done some work on invalidity-related defenses as well. (Conf'l App. to Pl.'s Br. 1279.) The fees attributable to this work are nominal in amount when compared to the overall request; but in an effort to remain consistent with the April 1 opinion and order and in fairness to Allcare, the Court concludes that a reduction of $3,250 is appropriate.[12]

III. Post-Judgment Interest

Lastly, Highmark seeks post-judgment interest running from the date of "this Court's judgment awarding attorney fees." (Pl.'s Br. 22.) Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C.A. § 1961(a). The phrase "any money judgment" in § 1961 includes a judgment that awards attorney fees. *Mathis*, 857 F.2d at 760. The purpose of this provision is to "deter[] use of the appellate process by the judgment debtor solely as a means of prolonging its free use of money owed the judgment creditor." Thus, "[i]nterest on an attorney

---

[12] This figure is based on the 6.5 hours Nobel spent working on his invalidity report at an hourly rate of $500. (Conf'l App. to Pl.'s Br. 1279.)

16

fee award . . . runs from the date of the judgment establishing the right to the award, not the date of the judgment establishing its quantum." *Id.* (citing *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544-45 (5th Cir. 1983); *Spain v. Mountanos*, 690 F.2d 742, 747-48 (9th Cir. 1982)). Therefore, because Highmark became entitled to attorneys' fees pursuant to the April 1 opinion and order,[13] post-judgment interest is appropriate and should accrue as of April 1, 2010, at a rate of .42%.[14]

V. Conclusion

Accordingly, Highmark shall recover attorneys's fees in the amount of $4,694,727.40 and $209,626.56 in expenses.[15] Highmark shall also recover expert fees and expenses in the amount of $375,400.05. Interest shall accrue on these amounts, beginning April 1, 2010, at

---

[13] Highmark received a judgment that conferred upon it "prevailing-party" status well before the April 1 opinion and order. However, because attorneys' fees under § 285 are within the discretion of the district court and are not automatic, that judgment is not the point at which Highmark became entitled to the fees or the point when post-judgment interest should begin to accrue. *See Mathis*, 857 F.2d at 760. In any event, Highmark has not requested that the post-judgment run from the earlier judgment. Thus, the judgment from which interest shall accrue is the April 1 opinion and order.

[14] Pursuant to 28 U.S.C. § 1961(a), this rate is "equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding." 28 U.S.C.A. § 1961(a).

[15] The breakdown is as follows:
Reed Smith - $ 4,491,196.80 in attorneys' fees and $193,833.5 in expenses;
Gardere Wynne - $203,530.60 in attorneys' fees and $15,793.06 in expenses;
Mark Gleason - $253,671.25 in expert fees and $3,583.89 in expenses; and
Jeremy Nobel - $108,625.00 in expert fees and $9,519,91 in expenses.

a rate of 0.42% pursuant to 28 U.S.C. § 1961.

SIGNED November 5, 2010.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE