**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

| | | |
|---|---|---|
| Highmark Inc., | § | |
| | § | |
| Plaintiff, | § | Civil No: 4:03 CV-1384-Y |
| | § | |
| v. | § | Judge Terry R. Means |
| | § | |
| Allcare Health Management Systems, Inc., | § | |
| | § | |
| Defendant. | § | |

**HIGHMARK INC.'S SUPPLEMENTAL BRIEF REGARDING THE IMPACT OF THE**
***OCTANE FITNESS* DECISION ON THIS COURT'S EXCEPTIONAL-CASE FINDING**

Cynthia E. Kernick
Pa. ID No. 43912
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA  15222
(412) 288-4176/3848

and

Craig B. Florence
Texas State Bar No. 07158010
Robert Slovak
Texas State Bar No. 24013523
GARDERE WYNNE SEWELL L.L.P.
1601 Elm Street, Suite 3000
Dallas, TX 75201
(214) 999-3000

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................................1

II. THE GOVERNING LEGAL STANDARD UNDER *OCTANE FITNESS* ........................2

III. PROCEDURAL BACKGROUND.............................................................................2

A.  This Court Enters Summary Judgment For Highmark, Finds This Case to be Exceptional, and Awards Attorneys' Fees Under § 285 .....................................2

B.  The Court's Exceptional-Case Finding Is Reviewed by the Federal Circuit and the Federal Circuit's Decision Is Reviewed by the Supreme Court..................4

IV. THE *OCTANE FITNESS* STANDARD AS APPLIED TO THIS  CASE'S SETTLED FACTUAL DETERMINATIONS ....................................................................6

A.  This Court's EC Opinion Was Grounded In Fact, and Found Multiple, Well-Supported Bases for Reaching Its Exceptional-Case Determination..............7

B.  Allcare's Claim 52 Infringement Allegations Were Frivolous, Both As Made and As Argued. ...............................................................................................8

C.  Allcare Failed to Perform a Legitimate Pre-filing Investigation and Ignored the Information That It Discovered. ..........................................................10

D.  Allcare Tried to Justify Its Allegations With A Phony Survey and With Charts Not Prepared Until Eleven Months After Filing. ......................................11

E.  Allcare's Other Vexatious and Abusive Conduct.................................................12

1.  *Allcare Was Not Justified in Relying on the Trigon Rulings* ...................13

2.  *Allcare's Frivolous Assertions of Collateral Estoppel and Res Judicata*................................................................................................15

3.  *Allcare Violated This Court's Scheduling Order and Caused Harm to Highmark By Repeatedly Changing Its Claim Construction*.................15

4.  *Allcare's Misrepresentations Regarding Seaport Surveys* ........................16

5.  *The Totality of Allcare's Abusive and Vexatious Conduct Is Exceptional* ..............................................................................................16

V.  NOTHING IN THE FEDERAL CIRCUIT OPINION CHANGES THE EXCEPTIONAL NATURE OF THIS CASE..................................................................17

VI. CONCLUSION.....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank, Int'l,*
   __ U.S. __, 134 S.Ct. 2347 (June 19, 2014) ...................................... 8

*Broadcom Corp. v. Qualcomm Inc.,*
   543 F.3d 683 (Fed. Cir. 2008).................................................. 18

*Brooks Furniture Mfg., Inc. v. Dutalier Int'l, Inc.,*
   393 F.3d 1378 (Fed. Cir. 2005)................................................. 2

*Carbino v. West,*
   168 F.3d 32 (Fed. Cir. 1999).................................................. 4

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.* ("*Highmark II*"),
   __ U.S. __, 134 S. Ct. 1774 (Apr. 29, 2014) ............................. 1, 5

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.* ("*Highmark I*"),
   687 F.3d 1300 (Fed. Cir. 2012)........................................... *passim*

* *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.* ("*Highmark III*"),
   __ Fed. Appx. __, 2014 WL 4377742 (Fed. Cir. Sept. 5, 2014)................5-6

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.,*
   628 F.3d 1359 (Fed. Cir. 2010)............................................... 18

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.,*
   __ U.S. __, 134 S.Ct. 1749 (Apr. 29, 2014) ........................... *passim*

*SmithKline Beecham Corp. v. Apotex Corp.,*
   439 F.3d 1312 (Fed. Cir. 2006)................................................ 4

*View Eng'g, Inc. v. Robotic Vision Sys.,*
   208 F.3d 981 (Fed. Cir. 2000)................................................ 10

**Statutes**

35 U.S.C. § 101 ................................................................. 8

35 U.S.C. § 285 ........................................................... *passim*

\* Pursuant to applicable chambers' requirements, a copy of this non-published case is attached.

## I.      INTRODUCTION

In 2010, this Court held this case to be "exceptional" under 35 U.S.C. § 285 based upon the baseless and "deceitful" litigation positions and tactics of Allcare Health Management Systems, Inc. ("Allcare"), observing that "***Allcare's actions align with the sort of conduct that gives the term 'patent troll' its negative connotation.***"   Doc. 566 ("EC Opinion") at 27 n.6. Accordingly, this Court awarded Highmark its fees and expenses.  Doc. 639.  The Court's exceptional-case determination subsequently was reviewed by the Federal Circuit *de novo*. *Highmark v. Allcare Mgmt. Sys., Inc.,* 687 F.3d 1300, 1313 (Fed. Cir. 2012)("*Highmark I*").  The Supreme Court, in turn, reversed the Federal Circuit, holding that exceptional-case findings, like this Court's, could only be reviewed for abuse of discretion.  *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,* ___ U.S. ___, 134 S. Ct. 1774, 1747 (Apr. 29, 2014)("*Highmark II*").  On the same day, the Supreme Court also decided *Octane Fitness, LLC v. Icon Health & Fitness, Inc.,* ___ U.S. ___, 134 S.Ct. 1749 (Apr. 29, 2014).  In *Octane Fitness*, the Court reversed another Federal Circuit decision and adopted a standard for exceptional-case determinations that gives greater discretion to district courts than the rigid standard previously endorsed by the Federal Circuit (and followed by this Court in its EC Opinion).  Because the *Octane Fitness* standard provides this Court discretion to make exceptional-case findings based upon the totality of the circumstances, this Court naturally can, and should, re-affirm that this is an exceptional-case.

None of the factual findings previously made by this Court were disturbed on appeal, and none should be re-visited now.  The already-determined facts are more than sufficient to support an exceptional-case finding under *Octane Fitness*.  This case was—and remains—"exceptional" for all of the reasons found by this Court in 2010.  Accordingly, the Court should re-issue its exceptional-case finding, Doc. 566, and the corresponding award of fees and costs, Doc. 639.

## II.      THE GOVERNING LEGAL STANDARD UNDER *OCTANE FITNESS*

In 35 U.S.C. § 285, Congress authorized district courts presiding over patent infringement cases to award attorneys' fees if they found the case to be "exceptional." Prior to *Octane Fitness,* the Federal Circuit had held that an exceptional-case finding under § 285 (for reasons other than litigation misconduct) had to be supported by clear and convincing evidence that the litigation was *both* objectively baseless *and* brought in subjective bad faith. *See Brooks Furniture Mfg., Inc. v. Dutalier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005).

On April 29, 2014, *Octane Fitness* overruled *Brooks Furniture* and adopted a more flexible discretionary standard, holding that an "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. Under *Octane Fitness*, district courts have broad discretion to determine whether a case is "exceptional" in light of the "totality of the circumstances." *Id.* at 1756. *Octane Fitness* also "reject[ed] the Federal Circuit's requirement that patent litigants establish their entitlement to fees under § 285 by 'clear and convincing evidence'" because § 285 "imposes no specific evidentiary burden, much less such a high one." *Id.* at 1758 (internal citations omitted).

## III.      PROCEDURAL BACKGROUND

### A.      This Court Enters Summary Judgment For Highmark, Finds This Case to be Exceptional, and Awards Attorneys' Fees Under § 285

More than twelve years ago, Allcare sent Highmark and dozens of other companies "cease and desist" letters, as part of a plan to reap a windfall from U.S. Patent 5,301,105 (the '105 patent"), a patent for which Allcare (who is not the inventor) had paid merely $75,000. Allcare obtained more than $10 million in licensing fees from various companies based on

threatened infringement claims.   Since then, it apparently has distributed those fees to the pockets of Allcare's principals, effectively choosing to make itself insolvent.   Allcare's principals did not invest money to practice the invention or maintain the company's lawsuits, but rather hired lawyers on a contingent-fee basis or simply failed to pay its lawyers.

Highmark refused to give in to Allcare's demands, and brought a declaratory judgment action challenging Allcare to prove its threatened claim of infringement.   Allcare counterclaimed with infringement allegations, but it soon became plain that Allcare had not done any substantive investigation into Highmark's system prior to sending its cease and desist letter and had misunderstood the significance of the information it did have.

After five years of discovery and two rounds of claim construction, Highmark moved for summary judgment.   In response, Allcare posited a unique but unsupportable infringement argument, to-wit, that the *mere filling out of a form* by Highmark's providers containing both symptom data (in the form of ICD codes) and separate treatment data (in the form of CPT codes) met the limitations of asserted claim 52(c) of the '105 patent.   Given the frivolousness of this contention, Highmark easily defeated Allcare's infringement claims.

Allcare immediately appealed the summary judgment, and the Federal Circuit unanimously affirmed it by a *per curiam* order issued only one day after oral argument.   While Allcare's appeal from the summary judgment was pending, Highmark sought an award of attorneys' fees from this Court under § 285 based on the exceptional nature of the case. Doc. 513, 515 (brief in support), 515-2 (proposed findings of fact), 516 & 517 (appendix in support).   Allcare opposed the motion.

After the Federal Circuit affirmed this Court's summary judgment for Highmark, this Court issued its EC Opinion, describing—over fifty-six pages—the reasons why Allcare's

conduct merited an "exceptional-case" finding under § 285.  Doc. 566.  In the EC Opinion, this Court noted that an exceptional-case finding "required a firm conviction [on the part of the Court] as to the truth of the allegations sought to be established [by Highmark]," Doc. 566 at 6, and it carefully followed the rigid framework of *Brooks Furniture*.  This Court was express in holding, under the clear and convincing standard and *Brooks Furniture*, that "[t]he evidence of [Allcare's] actions firmly convinces this Court of Allcare's use of frivolous and vexatious tactics and support an exceptional-case finding."  Doc. 566 at 52.

**B.     The Court's Exceptional-Case Finding Is Reviewed by the Federal Circuit and the Federal Circuit's Decision Is Reviewed by the Supreme Court.**

Allcare appealed the exceptional-case finding to the Federal Circuit, relying on *Brooks Furniture*'s formulaic, two-part test and attendant clear-and-convincing evidentiary burden.  Allcare challenged this Court's finding that this case was "exceptional," but it did *not* raise any issue about the amounts of the fees and expenses awarded.  Thus, if this Court re-affirms its prior findings that this is an exceptional-case, the Court will not be required to revisit the attorney's fee issue.  *See Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) (collecting cases); *see also SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (issues referenced on appeal in passing, without elaboration or substantive development in the principal brief, are waived).

Without any precedent, the Federal Circuit panel reviewed this Court's exceptional-case finding *de novo*, with no deference to this Court's ultimate determination.  The Federal Circuit panel unanimously affirmed this Court's finding that the case was exceptional as to claim 102.  *Highmark I,* 687 F.3d at 1313.

The three-judge panel was divided, however, over how to address the remainder of the EC Opinion, which addressed claim 52, Allcare's inadequate pre-filing investigation, and

Allcare's other litigation misconduct.  Judge Mayer would have affirmed the EC Opinion in its entirety.  Judges Dyk and Newman reached a different result based on their *de novo* assessment of the *Brooks Furniture* standard.

Notably, the Federal Circuit never reached Allcare's lack of pre-filing investigation and related misconduct concerning pre-filing activities after it held that claim 102 satisfied the *Brooks Furniture* standard.  *See Highmark I*, 687 F.3d at 1313 n.4, 1315.  For claim 52, Judges Dyk and Newman held, under the Court's newly-asserted *de novo* review powers, that *Brooks Furniture*'s (now-abrogated) objective prong could not be satisfied here because they believed that they could posit a construction for claim 52 that *may not* have been objectively baseless if Allcare had argued it (even though the posited construction was contrary to Allcare's own stipulations).  Therefore, the panel majority felt no need to further explore pre-filing activities as to claim 52.  *Id.* at 1315.  *Highmark I* was devoid of any consideration of whether Highmark's accused system actually could infringe under the posited hypothetical claim construction.

The Supreme Court granted review of the Federal Circuit's opinion and, on April 29, 2014, it reversed the Federal Circuit, holding that the Federal Circuit could not review this Court's exceptional-case finding *de novo*, but only for abuse of discretion.  *Highmark* II, 134 S. Ct. at 1747.  The Supreme Court's holding in *Highmark II* was limited to clarifying the appellate legal standard of review.  No factual issues were implicated by the Question Presented that was placed before the Court and the Court did not weigh-in on specific factual issues in this case; this Court's own factual determinations remain undisputed and controlling.

Allcare also neither sought nor obtained Supreme Court review of the Federal Circuit's decision as to claim 102.  Thus, the exceptional nature of claim 102 has been finally decided and is no longer before the Court.  *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, __ Fed. Appx.

- 5 -

__, 2014 WL 4377742, *2 (Fed. Cir. Sept. 5, 2014)("*Highmark III*") ("[t]he district court need not revisit its finding with respect to claim 102, which we previously upheld under the stricter standards then prevailing."). Thus, the Court may not reconsider its prior exceptional-case finding as to Claim 102, but the Court should take that claim 102 finding into account while reviewing the exceptional nature of Allcare's other actions and the totality of the circumstances.

The same day that *Highmark II* was decided, the Supreme Court decided *Octane Fitness*, and the two decisions clearly were intended to complement each other. *Octane Fitness* establishes the legal standard to be applied by district courts in deciding exceptional-case motions. *Highmark II*, in turn, establishes that such determinations may only be reversed for abuse of discretion.

Following *Octane Fitness* and *Highmark II*, the Federal Circuit remanded this case to this Court "for reconsideration under the new standard articulated in *Octane*." *Id.*

## IV. THE *OCTANE FITNESS* STANDARD AS APPLIED TO THIS CASE'S SETTLED FACTUAL DETERMINATIONS

*Octane Fitness* gives this Court discretion to re-state its prior finding of an exceptional-case based upon the existing factual determinations (reviewed in more detail below). Under *Octane Fitness*, this Court is not required to find that Allcare's claim of infringement under claim 52(c) was *frivolous* (although this Court previously made that finding and it still stands). All that this Court needs to find is that Allcare's actions over the course of the proceedings "stand[] out from others" in typical patent litigation. *Octane Fitness,* 134 S. Ct. at 1756. Here, this Court previously made that finding when it unequivocally held that "Highmark clearly has shown that Allcare's conduct was not part of normal litigation conduct," Doc. 566 at 35-36, and "[t]he evidence of [Allcare's] actions firmly convinces this Court of Allcare's use of frivolous and vexatious litigation tactics and supports an exceptional-case finding," Doc. 566 at 40.

**A.      This Court's EC Opinion Was Grounded In Fact, and Found Multiple, Well-Supported Bases for Reaching Its Exceptional-Case Determination.**

In its EC Opinion, this Court found that Allcare: (1) asserted infringement claims without any legal or factual basis, Doc. 566 at 31-32; (2) pursued claims against Highmark after Allcare's own expert rejected Allcare's infringement argument to maintain "leverage" against Highmark, Doc. 566 at 29-32, 36; (3) failed to perform a legitimate pre-filing investigation, Doc. 566 at 11-21, 25-26, 32; (4) ignored exculpatory information it learned pre-filing about Highmark's system, Doc. 566 at 24-25, 50-51; (5) used a phony survey to force unneeded licenses from Highmark and other innocent third parties, Doc. 566 at 22-23, 49-50; and (6) engaged in litigation misconduct, including (a) improperly relying upon the unproven assumption that Highmark's system must be the same as the unrelated Trigon's and upon the *Trigon* rulings that never found infringement by Trigon and were dubious in other ways, Doc. 566 at 21-22, 29, 36-39; (b) asserting and withdrawing meritless claims; (c) making misrepresentations about the Seaport Survey; and (d) modifying its claim construction without leave of court *after* this Court's deadline, Doc. 566 at 41-45, 50-52.  None of the findings were deemed clearly erroneous on appeal and therefore cannot and should not be subject to reconsideration now.

This Court's EC Opinion has done what *Octane Fitness* requires.  It has carefully considered the "totality of the circumstances" surrounding Allcare's infringement claims.  And, although the *Octane Fitness* standard requires the findings to be made only by a preponderance of the evidence, this Court found an exceptional-case based upon "clear and convincing" evidence under the higher *Brooks Furniture* standard.  Doc. 566 at 5-6.

**B.    Allcare's Claim 52 Infringement Allegations
        Were Frivolous, Both As Made and As Argued.**

This Court found Allcare's allegations of infringement under claim 52 were frivolous. From the start to finish of this action, before and after claim construction, Allcare maintained that claim element 52(c) could be infringed by a provider merely *filling out an electronic form* and separately inserting both symptom data and treatment data into that form.[1]  Doc. 566 at 38. In finding Allcare's position frivolous, this Court considered Allcare's position in light of certain stipulations it made throughout the litigation.  For example, Allcare stipulated that the invention of the '105 patent, and element 52(c) in particular, includes *at least* a "diagnostic smart system" in which "a physician enters codes symbolizing patient symptoms that are then compared by the computer system to stored data on the usual symptoms of common diseases and ailments.  After this comparison, the system generates a list of conditions that are likely the cause of the specified patient's symptoms, along with recommended treatments."  Doc. 566 at 3.  Allcare consistently admitted that Highmark's system lacked this feature.   Yet Allcare continued to assert infringement.  Doc. 541-2, 2:20 to 3:1, 7:15-18; Doc. 484 at 11.

Allcare also stipulated to the meaning of the word "for," the keystone of element 52(c), as being "used to indicate the aim, or purpose of an action or activity." Doc. 367 at 28; Doc. 484 at 15.  Thus, as found by this Court, for element 52(c) to be infringed, "the proposed mode of treatment must be identified by using the entered symptoms to determine one or more

---

1    Whether this abstract idea constitutes patentable subject matter was not reached by this court because it entered summary judgment of non-infringement before trial, but both claims 52 and 102 are infected by a "substantial question" of 35 U.S.C. Section 101 invalidity.  *See* Doc. 541-2 at 8, ll. 24 (transcript of 2009 oral argument, pp. 8, 12); *see also* Doc. 566 at 38 (referencing panel's 2009 comments); *Highmark I,* 687 F.3d at 1323-24 (Mayer, J., dissenting)  (citing 35 U.S.C. § 101 and collecting cases); *Alice Corp. v. CLS Bank, Int'l,* __ U.S. __, 134 S. Ct. 2347 (June 19, 2014).

appropriate treatments." Doc. 484 at 15 (affirmed on appeal). In Highmark's system, as this Court found, it was the "CPT codes"—and not the entry of symptom data (*i.e.*, not the "ICD 9 codes")—that identified the "treatment." Doc. 566 at 31-32. This Court rejected Allcare's "completed form" argument because Allcare's expert confirmed that, in Highmark's system, the patient's "symptom data" was entered to identify the condition or disorder for which the patient was receiving treatment and not to "identify[]" the treatment. A11587. Given these stipulations by Allcare, there could be no infringement of claim 52 by Highmark.

Further, this Court found that—even if there had been doubt about non-infringement early in the action, and separate and apart from the problematic stipulations addressed above— Allcare also maintained its infringement allegations with respect to claim 52 and claim 102 even *after* its own expert "conceded in his August 2007 deposition that Highmark's system did not infringe the '105 patent" and *after* the claim construction rulings "made it apparent that Highmark's system did not infringe upon claim 52." Doc. 566 at 29-32.

Despite all of the foregoing, Allcare pressed forward with its claims. This was exceptional conduct.[2]

---

[2] The Federal Circuit affirmed this Court's finding that Allcare's pursuit of its infringement allegations regarding claim 102 met the definition of "exceptional." *Highmark I,* 687 F.3d at 1313 n.4 (Allcare "knew or should have known that the allegation of infringement of claim 102 was frivolous"); *see also id*. at 1311-13. To reach that finding, this Court found it compelling that Allcare continued to pursue its infringement contentions after its own expert admitted elements of claim 102 were missing from Highmark's system. Doc. 566 at 29-30. Apart from that, Allcare also conceded that it pursued its infringement contentions under claim 102 solely for "leverage" against Highmark's invalidity allegations. *Id.* at 35-36. This sort of vexatious conduct manifestly is unreasonable as to claim 52 just as it was as to claim 102.

**C.**    **Allcare Failed to Perform a Legitimate Pre-filing Investigation**
        **and Ignored the Information That It Discovered.**

This Court found Allcare's inadequate pre-filing investigation to be exceptional in light of controlling precedent requiring that "*prior to filing a complaint of infringement*, including a counterclaim to the alleged infringer's declaratory-judgment action, the patentee 'must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed *before filing the claim* that it had a reasonable chance of proving infringement.'"   Doc. 566 at 26 (quoting *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000)) (emphasis added).    In violation of *View Engineering*, Allcare initiated and maintained its frivolous infringement claims without *any* meaningful pre-filing investigation of Highmark's system and without reasonable belief that Highmark's system infringed claims 52 and 102.    Moreover, Allcare ignored exculpatory information that it discovered while developing its claims.

This Court found that Allcare ignored available pre-filing evidence that demonstrated Highmark's non-infringement.[3]  Doc. 566 at 18-19, 24-27.   Allcare should have known that it could not prove infringement under the theory it was promoting because, even before sending its cease and desist letter, Allcare had obtained a demonstration version of Highmark's system. Doc. 566 at 18-21.   Before threatening suit and asserting infringement claims, Allcare's Vice-President, Robert Shelton, had discovered an on-line demonstration version of Highmark's system that clearly "displayed the code [that] was used by Highmark's system ... and what the

---

[3]   This Court correctly placed the blame for the bungled pre-filing investigation on Allcare's Robert Shelton, who was neither a lawyer nor one skilled in the art.  Doc. 566 at 24-25; Doc. 515-2 at ¶¶ 104-106.   It was Shelton who developed Allcare's infringement opinion, Doc. 566 at 14, 17—an opinion based upon a survey that this Court found to be intentionally designed (by Shelton) as a "guise" to force companies to pay for licenses through infringement threats.  Doc. 566 at 49, 50-51 (noting that Shelton's survey failed to "ensure that questions were asked about the key aspects" of the accused system).

code was used for (to indicate symptoms rather than to determine a proposed treatment)."
Doc. 566 at 24; Doc. 517-3, ¶¶ 12-15.  The demonstration copy of Highmark's system obtained
by Allcare confirmed that Highmark's system used CPT codes, not symptoms, to identify
treatments—a fact fatal to Allcare's claim 52 allegations.  Doc. 566 at 8-25.  Yet, as found by
this Court, Allcare failed to have any lawyer review the demonstration copy prior to asserting
infringement and ignored this exculpatory evidence when it asserted its counterclaims.  Doc. 566
at 18-19, 24-27.[4]

**D.      Allcare Tried to Justify Its Allegations With A Phony Survey**
**          and With Charts Not Prepared Until Eleven Months After Filing.**

This Court also held, in finding this case to be exceptional, that the "Seaport Survey,"
upon which Allcare attempted to rely was merely "a ruse to identify potential targets for
licensing demands."  Doc. 566 at 27 n.6.  Allcare's Shelton, in furtherance of Allcare's licensing
scheme, engaged Seaport Surveys to perform a survey he designed.   Doc. 566 at 42-43.
Companies were falsely advised that the survey's purpose was to "identify organizations that are
leaders in the electronic processing of authorizations and referral requests."   Doc. 566 at 2.  In
fact, its purpose was to identify target companies "and then force the companies to purchase
licenses" from Allcare "under threat of litigation."  Doc. 566 at 27 n.6, 50.  Highmark was one of
Allcare's targets but, as found by this Court, the survey—even were it not a ruse—could not
form the basis of a proper pre-filing investigation because it "failed to ask questions to determine

---

[4]   Allcare's defense to assertions that it had not performed a reasonable pre-filing investigation
      was solely the declaration of its lead counsel, Steven Hill.  Doc. 566 at 15 ("Allcare has
      produced a declaration by Hill, largely comprised of other broad statements and general
      assurances").   Hill's declaration was in violation of local rule 7.1(i)(1), and this effort to
      justify the scant pre-filing investigation by Allcare, without providing documentary support,
      was reasonably not believed by this Court.  Doc. 566 at 47 ("there is no documentary
      evidence to support Hill's assertions [in his declaration]"); Doc. 530 at 1-2.

whether the surveyed companies' systems contained all of the necessary elements of claims 52 and 102." Doc. 566 at 22-23 (*i.e.*, the survey did not even ask Highmark whether its system contained the key aspects of claims 52 or 102 ultimately found to be missing from Highmark's system).

When pressed, Allcare also claimed to have placed its reliance, pre-filing, on charts prepared by the novice patent-litigator, Steven Hill, purporting to compare Highmark's system to those of a system operated by the *unrelated* entity, Trigon. Doc. 566 at 13, 21, 37 (no finding of infringement was made as to Trigon). But this was another misrepresentation by Allcare—this Court held that the evidence confirmed that these Hill-created charts were not prepared until *eleven months after Allcare filed its counterclaims*. Doc. 566 at 13, 21. In fact, Allcare did not consult an expert about Highmark's system at all until *after* its counterclaims were filed, and did not even take an expert to inspect Highmark's systems. Doc. 566 at 13-14, 28.

## E.     Allcare's Other Vexatious and Abusive Conduct.

Allcare's unreasonableness did not end with its frivolous infringement contentions or its deeply-flawed pre-filing investigation. It extended to Allcare's litigation tactics. In its EC Opinion, this Court examined Allcare's conduct over the course of the litigation. Doc. 566 at 1. In the process, this Court identified four specific behaviors by Allcare that were indisputable litigation misconduct. First, Allcare continued the pursuit of frivolous claims based on strategic considerations of "leverage" rather than merit. Doc. 566 at 28-36. Second, Allcare's assertion of meritless res judicata and collateral estoppel defenses based upon the prior, but unrelated, *Trigon* rulings were a tactic this Court found "frivolous and vexatious" because Allcare previously had acknowledged that the *Trigon* rulings "have no binding effect on Highmark in this litigation." Doc. 566 at 39-40. Third, this Court considered Allcare's ever "shifting claim

construction," and found it to be vexatious because of "[t]he timing of Allcare's proposed constructions."   Specifically, Allcare twice changed its proposed construction "[a]fter the scheduling-order deadline" and without leave of court.   Doc. 566 at 41.   Finally, this Court considered Allcare's statements to the late Judge Gary Lancaster of the Western District of Pennsylvania that it lacked control of the Seaport Survey and this Court deemed the statements to be a   misrepresentation made to defeat jurisdiction in Pennsylvania.   Doc. 566 at 45 ("Allcare's statements were "at best obfuscatory," and "strained[] the bounds of zealous advocacy.").[5]

### 1.   Allcare Was Not Justified in Relying on the Trigon Rulings

Allcare's principal rebuttal to Highmark's motion for an exceptional-case finding was that its actions could be excused because its pre-filing assessment of infringement was based upon what it had learned about the Trigon system and a belief, never proven, that Trigon's system infringed claims 52 and 55 of the '105 patent.   Doc. 566 at 21.   This Court invested significant time and effort in considering the impact on the litigation as a whole caused by Allcare's repeated interjections of the *Trigon* action into the present case.   And it made certain— now well-settled—findings, discussed below.

---

[5]   On appeal, and before reversal by the Supreme Court, the Federal Circuit majority held that no consideration could be given to this misrepresentation because it occurred before a judge other than Judge Means.   *Highmark I*, 687 F.3d at 1318.   But, while this might be true under Federal Rule of Civil Procedure 11, to hold conduct in a transferring court not relevant under § 285 would insulate nearly all Multi-District Litigation cases from § 285 because claim construction is frequently handled in one jurisdiction before transfer to another for the infringement analysis.   More importantly, it would violate *Octane Fitness*' instruction to evaluate the "totality" of the circumstances of the case.   *Octane Fitness,* 134 S. Ct. at 1756.

Allcare's first assertion of infringement directed to Highmark was made in April *2002* (Shelton's cease and desist letter), Doc. 566 at 2, and thus pre-dated the February 3, 2003 *Trigon* rulings, and indeed the *Trigon* litigation entirely, Doc. 566 at 2-3. Despite these significant discrepancies in timing and substance, "Hill described Allcare's pre-filing investigation of its claims against Highmark as involving 'discussions with technical experts … who [] authored an expert report in *Trigon* addressing one or more aspects of patent infringement of *Trigon's* system." Doc. 566 at 12-13.

Further, as found by this Court, there was no evidence at all that Highmark's system was the same or similar to Trigon's. Doc. 566 at 21, 29. Allcare could not dispute that the *Trigon* court never found Trigon's system to infringe any claim of the '105 patent; rather, only that material issues of fact remained as to Trigon's motion for summary judgment. Doc. 566 at 21, 37. Without an infringement finding in *Trigon*, this Court found, it was improper for Allcare to rely on those rulings to assert infringement against Highmark even if there had been proof that Highmark's system had been the same. Doc. 566 at 37-38. Further, once claim construction issued in this action, the "issue became whether Highmark's system infringed the '105 patent [claims] so construed. The *Trigon* Rulings became irrelevant." Doc. 566 at 38. And yet still, Allcare continued to rely upon them.

This Court also found that that, in any event, the *Trigon* rulings were of questionable value because they were contrary to the ordinary meaning of the word "for" as used in the context of the element 52(c). Doc. 566 at 37-38. The *Trigon* court had prepared a laundry list of construed terms either based on the stipulations of Allcare and Trigon or on a generalized view of "plain and ordinary meaning" of the terms separate and apart from their use in the claims. Doc. 527-2. As to the word "for," the *Trigon* court accepted the meaning *stipulated to* by Trigon

and Allcare, Doc. 527-2 at A0045 ("the parties [Trigon and Allcare] agree to the plain and ordinary meaning of the word "for"), which caused the *Trigon* court mistakenly to hold the word "for" to indicate a correspondence, such as "two for one."  Doc. 566 at 38.

This Court also found that, at no point, had any evidence been submitted by Allcare that Trigon's system was the same as, or even similar to, Highmark's.  Doc. 566 at 21.

### 2. *Allcare's Frivolous Assertions of Collateral Estoppel and Res Judicata*

This Court found that Allcare's Shelton admitted that Trigon and Highmark are unrelated companies.  Doc. 566 at 39-40.  Yet, after this admission, Allcare asserted claims of res judicata and collateral estoppel against Highmark.  Doc. 566 at 39-40 (citing Doc. 22 at ¶¶ 10-18).  The sole support offered by Allcare for its assertion of a common interest between Highmark and Allcare was that Highmark's counsel had been present in the courtroom gallery at an oral argument in *Trigon*.  Doc. 22 at ¶16.  Highmark asked Allcare to voluntarily withdraw these claims, but was forced to file a motion for judgment on the pleadings.  Doc. 566 at 40.  Only then did Allcare withdraw these defenses.  "Allcare [had] knowledge that the defenses were without merit, [yet] it nevertheless asserted them and thereby unnecessarily increased the issues and costs in this litigation."  Doc. 566 at 40.

### 3. *Allcare Violated This Court's Scheduling Order and Caused Harm to Highmark By Repeatedly Changing Its Claim Construction*

This Court found that Allcare violated the Scheduling Order with its requirement that Allcare, as patentee, set forth its final proposed claim construction by August 23, 2004.  Doc. 566 at 41.  Although Allcare did timely set forth a *first* proposed construction as to claims 52, 53 and 102, it changed its proposed construction at least twice after the court-ordered scheduling deadline, all without leave of court.  Doc. 566 at 41-42.  As found by this Court,

Allcare's shifting of its claim-construction position "complicat[ed] Highmark's ability to advance its own claim construction and to defend against Allcare's elusive allegations." Doc. 566 at 42.

### 4.    *Allcare's Misrepresentations Regarding Seaport Surveys*

The Seaport Survey discussed above also contributed to the exceptional nature of this case in a second way:  Allcare made intentionally untrue representations to a federal district judge about whether it had controlled over the survey.  To secure a transfer from the Western District of Pennsylvania (where Highmark resides) to the Northern District of Texas (where Allcare resides), Allcare argued to District Court Judge Gary Lancaster that Allcare had no connection to Pennsylvania and submitted a sworn declaration from Shelton that "Allcare did not control how Seaport Survey carried out its survey, nor did it dictate what companies Seaport opted to call upon."  Doc. 566 at 42-43.  Reviewing the evidence, this Court found this statement untrue and "at best obfuscatory," Doc. 566 at 45, holding that, in fact, Allcare "controlled" every aspect of the survey, with the exception of making the actual phone calls.  Doc. 566 at 43.

### 5.    *The Totality of Allcare's Abusive and Vexatious Conduct Is Exceptional*

Collectively, the persistent pattern of abusive and vexatious conduct provided ample foundation for an exceptional-case finding and a fee award under § 285 under the new "discretionary" standard of *Octane Fitness* just as it did under the higher *Brooks Furniture* standard.  When assessing whether litigation misconduct justifies an exceptional-case finding, "sanctionable conduct is not the benchmark.  ... [A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so "exceptional" as to justify an award of fees."  *Octane Fitness,* 134 S. Ct. at 1756-57.  But this Court went even further by emphasizing that information was available to Allcare—

from public sources, from Highmark, and from its own experts—through which Allcare could have, and should have, determined that its infringement allegations lacked merit.

## V.   NOTHING IN THE FEDERAL CIRCUIT OPINION CHANGES THE EXCEPTIONAL NATURE OF THIS CASE

This Court's prior thoughtful and comprehensive analysis, summarized above, demonstrates why Allcare's entire course of conduct made this case "exceptional" and why it should continue to be treated as such.  As required under *Octane Fitness*, this case "stands out from others," regardless of whether each individual act of Allcare would itself independently have been sanctionable.  *Octane Fitness*, 134 S. Ct. at 1748.  After looking at the "totality of these circumstances" the first time, this Court firmly was convinced that Allcare's pre-litigation conduct and litigating positions "stood out" from the normal and legitimate actions of a party to an action.  *See* Doc. 566 at 1, 17, 31 n.6, 50.  Indeed, in summarizing Allcare's conduct, this Court drove that point home.

> Allcare's actions align with the sort of conduct that gives the term "patent troll" its negative connotation.  [It] used a survey with a stated purpose of identifying leaders in the medical-information-processing industry as a ruse to identify potential targets for licensing demands, accused Highmark of infringing the '105 patent and, ultimately, filed counterclaims for infringement against Highmark having never performed an adequate investigation of such claims, and, along the way engaged in questionable and, at times, deceitful conduct.

Doc. 566 at 27 n.6.

The Federal Circuit's prior analysis rejecting the exceptional-case finding related to claim 52(c) was based on a claim construction that Allcare never advanced, and did not reflect its litigating position at all.  That analysis was possible only because the Court undertook its review *de novo*, applying the "objectively baseless" standard of *Brooks Furniture*.  But such a novel theory, not actually presented to the trial court for its consideration and contrary to Allcare's own stipulations, has no role to play in this Court's post-*Octane Fitness* analysis.  *See*, *e.g.*, *Lazare*

*Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) (citing *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008) (arguments, including claim construction arguments, not presented to the district court are not considered on appeal). The same goes for the Federal Circuit's assessment of Allcare's litigation tactics. The Federal Circuit dispensed with Allcare's conduct *only* by resorting to its now-reversed *de novo* review, and it failed to view Allcare's actions in the context of Allcare's overall tactics and positions as required by *Octane Fitness*. Thus, the Federal Circuit opinion is not controlling except as to its affirmance of the exceptional finding as to claim 102 since the Federal Circuit's ruling was never taken to the Supreme Court.

As noted, this Court was firmly convinced that Allcare's pre-litigation conduct and litigating positions "stood out" from the normal and legitimate actions of a party to an action. *See* Doc. 566 at 1, 17, 31 n.6, 50. Nothing more is required, under *Octane Fitness*, to re-issue the Court's exceptional-case determination and fee award. It is well within this Court's discretion to re-affirm its EC Opinion and find, again, that Allcare's action has made this entire case exceptional, including as to claim 52 and as to Allcare's litigation conduct.

## VI.     CONCLUSION

For the reasons detailed above, the actions of Allcare in asserting infringement against Highmark, and in its prosecution of those infringement contentions, makes this case exceptional and merits an award of fees as previously calculated by this Court. For these reasons, this Court should exercise its discretion and once again find the case exceptional as to claim 52 and re-issue the entirety of its award of fees and expenses to Highmark.

Respectfully submitted,

By: **/s/ *Cynthia E. Kernick***

Cynthia E. Kernick
Pa. ID  43912
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA  15222
(412) 288-4176

and

Craig B. Florence
Texas State Bar No. 07158010
Robert Slovak
Texas State Bar No. 24013523
GARDERE WYNNE SEWELL L.L.P.
1601 Elm Street, Suite 3000
Dallas, TX 75201
(214) 999-3000

Counsel for Plaintiff Highmark Inc.

Dated:  October 10, 2014

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 10, 2014, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

I further certify that on October 10, 2014, a true and correct copy of the foregoing document was served by overnight mail on defendant, who is currently not represented by counsel in this matter:

**Allcare Health Management System, Inc.**
**Attention: Mr. W. Halden Conner, President**
**777 Main Street, Suite 3100**
**Forth Worth, TX 76102**

*/s/ Cynthia E. Kernick*
Counsel for Plaintiff Highmark Inc.